1 | DARON L. TOOCH (State Bar No. 137269)
GLENN E. SOLOMON (State Bar No. 155674)
2 | JOHN A. MILLS (State Bar No. 231107)
**HOOPER, LUNDY & BOOKMAN, INC.**
3 | 1875 Century Park East, Suite 1600
Los Angeles, California 90067-2517
4 | Telephone: (310) 551-8111
Facsimile: (310) 551-8181
5 | E-Mail: dtooch@health-law.com

6 | Attorneys for Plaintiffs

7

8 | ### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

9

10

11 | DOWNEY SURGICAL CLINIC, INC.,
TARZANA SURGERY CENTER,
INC., For Themselves And On Behalf
12 | Of All Others Similarly Situated,

13 | Plaintiffs,

14 | vs.

15 | INGENIX, INC., UNITEDHEALTH
GROUP, INC., UNITED
16 | HEALTHCARE SERVICES, INC.,
UNITED HEALTHCARE
17 | INSURANCE COMPANY, For
Themselves; ALLIED HOLDINGS
18 | EMPLOYEE WELFARE BENEFIT
PLAN, ALLIED HOLDINGS, INC.,
19 | BEST BUY FLEXIBLE BENEFITS
PLAN, BEST BUY CO., INC.,
20 | CINGULAR WIRELESS MEDICAL
PLAN, AT&T MOBILITY LLC,
21 | PACIFIC TELESIS GROUP HEALTH
CARE NETWORK PLAN, AT&T
22 | MEDICAL EXPENSE PLAN, AT&T
CORP., CINTAS CORPORATION
23 | EMPLOYEE HEALTH BENEFIT
PLAN, CINTAS CORPORATION
24 | GROUP INSURANCE PLAN,
CINTAS CORPORATION, GE LIFE
25 | DISABILITY AND MEDICAL PLAN,
GENERAL ELECTRIC COMPANY,
26 | J.C. PENNEY CORPORATION, INC.
HEALTH & WELFARE BENEFITS
27 | PLAN, J.C. PENNEY
CORPORATION, INC. BENEFITS
28 | ADMINISTRATION COMMITTEE,

CASE NO. CV 09-05457 PSG (CTx)

**AMENDED CLASS ACTION
COMPLAINT AND DEMAND FOR
JURY TRIAL**


COPY

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2010 MAY -7 PM 4 00
CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CA
LOS ANGELES
FILED

1076823.8

1  PARKER HANNIFIN
   CORPORATION GROUP
2  INSURANCE PLAN, PARKER
   HANNIFIN CORPORATION, ZALE
3  CORPORATION BENEFITS PLAN,
   ZALE CORPORATION, For
4  Themselves And On Behalf Of All
   Others Similarly Situated; DOES 1-10,
5
          Defendants.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

2

AMENDED CLASS ACTION COMPLAINT

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

Plaintiffs Downey Surgical Clinic, Inc. ("Downey") and Tarzana Surgery Center, Inc. ("Tarzana") bring this action on behalf of themselves and all other similarly situated out-of-network Ambulatory Surgery Centers ("ASCs") in the United States, against defendants UnitedHealth Group, United HealthCare Services, United Healthcare Insurance Company, and Ingenix, Inc. (collectively "United"), and against the ERISA plans and plan administrators who contracted with United to price claims for ASCs:

## INTRODUCTORY STATEMENT

1. Downey and Tarzana (collectively "Plaintiffs") file this class action on behalf of themselves and all those similarly situated "out-of-network" ASCs" in the United States of America (the "Plaintiff Class") whose claims have been systematically under-priced by United. The claims are submitted by the Plaintiff Class to United for pricing and payment according to a payment rate that in the industry and in plan documents is commonly referred to as the "Usual, Customary and Reasonable" rate, the "Reasonable and Customary" amount, the "Usual and Customary" amount, the "Reasonable Charge," the "Prevailing Rate," the "Usual Fee," the "Competitive Fee," or some other similar phrase that, in the context of the healthcare industry, and in the Defendants' own parlance, means essentially the same thing. The industry shorthand for these terms is "UCR."

2. The UCR amount is properly determined based on a review of the prevailing or competitive charges for similar healthcare services by similar types of providers within the same geographical area at the time. However, for years United has systematically failed to properly price the claims according to UCR, and has systematically concealed this failure, through misrepresentations and concealments about its pricing and payment methods.

3. United prices claims for medically necessary services that the Plaintiff Class provides to patients who are members of a variety of types of health plans, including some that are funded by the member's employer, and some that are fully

Exh. D, Page 90

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1 insured by United (hereafter, the "members"). Many of these health plans are

2 governed under the Employee Retirement Income Security Act ("ERISA"). These

3 ERISA Plans have fiduciary duties as the designated plan administrators to ensure

4 that out-of-network claims are properly priced and paid according to UCR. But

5 through their collusion with United, they have participated in the systematic under-

6 pricing of claims, as well as in the systematic cover-up. United and the class of

7 ERISA Plan defendants will be collectively referred to as the "Defendants."

8     4.     United is one of the largest health insurers in the country, and each year

9 processes thousands of claims submitted by ASCs. United uses a variety of methods

10 for pricing claims from ASCs who have no contracts with United and, like the

11 Plaintiff Class, are therefore considered "out-of-network." Yet, despite having

12 access to a wealth of charge data, none of these methods price claims according to

13 UCR, and generally, United simply ignored the charges altogether.

14     5.     One of United's improper pricing methods for calculating the UCR rate

15 for out-of-network ASC claims is to base such calculation on contracted rates, or the

16 "highest in-network rate." Plaintiffs are informed and believe that the "highest in-

17 network rate" methodology was developed by Ingenix, and considers only two

18 factors: the billing code for the procedure, and a fixed, contractually-based

19 discounted rate that "in-network" ASCs receive for the procedure pursuant to a

20 negotiated discount. Defendants know that the in-network rates are lower than

21 charges because getting a discount off charges is a key purpose for having a

22 network. United then sometimes multiplies the in-network rate by an arbitrary

23 multiplier to arrive at the "allowed amount." Plaintiffs have not had the opportunity

24 to conduct discovery on whether United in fact uses a multiple of its **"highest"**

25 contracted rates under this methodology, or in how United selects the arbitrary

26 multipliers. In any event, it is arbitrary, capricious and improper to use contract

27 rates for establishing UCR reimbursement for non-contracted claims, for reasons

28 which will be discussed in detail below.

6. Another improper pricing method sometimes used by United for UCR is a Medicare-based system that United calls the Maximum Non-Network Reimbursement Program ("MNRP") method. According to United, MNRP creates a maximum allowable reimbursement for out-of-network services using rates and methodologies established by Medicare. The calculation for this methodology is typically the Centers for Medicare and Medicaid Services (CMS) Rates multiplied by a factor such as 1.15 or 1.25. The MNRP is similar to the "highest in-network rate" methodology, in that it is an arbitrary, capricious and improper method for determining UCR for out-of-network claims.

7. United also has priced some out-of-network ASC claims for UCR using what is commonly referred to as the "Ingenix Database." The Ingenix Database is comprised of at least two databases, the Prevailing Healthcare Charges System ("PHCS") and MDR databases operated by Ingenix, which are inherently flawed and inadequate to establish appropriate UCR amounts. The failure of the Ingenix Database to properly price claims according to UCR is explained in detail below.

8. Plaintiffs are informed and believe that United also may employ other methods for pricing claims which do not appropriately establish UCR.

9. Regardless of method, however, there is a common thread for all of these underpriced claims. They _all_ were priced in a manner that did not follow the correct or stated criteria for determining UCR.

10. United knows that its methodologies do not actually establish a UCR amount, and the Defendants all know that, as a consequence, the Plaintiff Class is being systematically underpaid for their services. Nonetheless, rather than disclose the true methodologies being used to price the claims, when reimbursing claims for out-of-network ASC services the Defendants made representations through the United States mail and wire services, to the ASCs and their patients, that United had accurately and appropriately calculated the amount owed for the ASC services according to UCR.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX: (310) 551-8181

11.    For example, the Explanations of Benefits ("EOBs")[1] that United sent through the mail would typically provide:

> Your plan covers reasonable charges for therapeutic treatment of sickness or injury. <u>The **reasonable charge** is based on amounts **charged** by other providers for similar services or supplies</u>. [Emphasis added.]

Such statements are designed to conform to the plans' descriptions of UCR reimbursement. They also are designated to conform to United's marketing statements of its out-of-network reimbursement methodology, in which United represents that it bases payment on what other healthcare providers in a geographic area charge for similar services or supplies.

12.    As another example, in statements made through the mail and wire services, United sometimes represented that it had calculated the UCR rate using the Ingenix Database, which United purported to consist of accurate prevailing provider charges. In these communications made through the United States mail and wire services, United falsely represented to ASCs and their patients that the Ingenix Database contains trustworthy charge material collected from the largest health insurers in the country and reliable industry sources. United also makes these representations on its website, where it states that "in most cases" it pays the out-of-network claims based on the reasonable and customary amount based on the charges of other health care providers in the geographic area as determined using the Ingenix Database.

13.    The statements United made through the mail and wire services were in fact false.

14.    United made these representations, and continues to make such

---

[1] Some payors call the forms Explanations of Payment ("EOPs") or Remittance Advices ("RAs"). EOBs, EOPs and RAs will be collectively referred to as "EOBs."

Exh. D, Page 93

representations, both on its own behalf and on behalf of the defendant ERISA plans which contract with United to administer the plans.

15. Plaintiffs are informed and believe, and thereon allege, that the Defendant Class have at all pertinent times been aware of United's statements, and have authorized United to make statements for the ERISA Plans.

16. As a result of the flaws and abuses concerning the Ingenix Database which have come to light in recent years, and based on United's representations that it used the Ingenix Database to determine the UCR rate for Downey's claims, Downey filed the class action complaint against the United Defendants on July 27, 2009. That complaint alleged that the use of the Ingenix Database for determining UCR rates for out-of-network ASC claims is invalid and unlawful, and that past UCR determinations with respect to the Class should be re-calculated. While that remains true, it has since come to light that United often did not even use the Ingenix Database for most ASC claims, despite asserting that it had during the ordinary course of business.

17. Months after the initial class action complaint was filed, United represented to Plaintiffs, and to the Court, that United did not, and does not, use the Ingenix Database to reimburse claims submitted by ASCs. According to United, the representations that it made during the ordinary course of business to Plaintiffs and other ASCs, and to the members, were not true, and that Ingenix actually priced ASC claims by using the inappropriate "highest in-network rate" method. However, United's "highest in-network rate" does not take into account actual charges, nor does it compare the actual charges with charges by other ASCs for the same or similar service in the relevant geographic area. Accordingly, by using in-network rates to calculate payments for out-of-network ASC claims, United's representations on its EOBs – that "the reasonable charge is based on amounts <u>charged</u> by other providers for similar services or supplies" – were false.

18. Even later, after representing to Plaintiffs and the Court that United

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

Exh. D, Page 94

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   does not use the Ingenix Database to price out-of-network ASC claims, United

2   admitted that some out-of-network ASC claims were, in fact, paid using the Ingenix

3   Database.  At this stage it is difficult to know which of United's conflicting

4   statements about using the Ingenix Database is correct.  But they are all masking

5   that United did not actually pay based on UCR.

6       19.    ASCs all across the country, including Plaintiffs, have been harmed by

7   the Defendants' failure to properly pay for ASC services that were provided to the

8   Defendants' members.

9       20.    Defendants' failure to appropriately and fairly compensate non-

10  contracted claims has not only injured ASCs, it has also caused the ASC patients

11  (*i.e.,* Defendants' insureds and members) to be exposed to significant liability.  In

12  under-pricing the claims, Defendants have represented, in EOBs and other

13  documents sent through the United States mail, that the patients are liable to the

14  ASCs for amounts that should have been covered – *i.e.,* the amount of the claim not

15  paid by Defendants that should have been paid by Defendants.  These statements are

16  false because, had United accurately and appropriately priced and paid the ASC

17  claims, the EOBs would show that the patients owed far lower amounts to the ASCs.

18  By systematically underpricing the claims, United and the other Defendants are

19  illegally transferring liability for paying ASC claims to the patients.

20      21.    Plaintiffs and the Plaintiff Class are the assignees of the members.  The

21  failure and refusal of Defendants to fairly and appropriately compensate ASCs for

22  their healthcare services constitutes a violation of Defendants' duties to pay the

23  members of the Plaintiff Class under ERISA.

24      22.    Defendants also have violated the Racketeer Influenced and Corrupt

25  Organizations Act ("RICO") in that they have committed mail fraud and wire fraud

26  in connection with their scheme to underpay ASCs by, among other things, using

27  mail and interstate wire services to send false and misleading information

28  concerning the Defendants' methodologies for determining UCR rates and out-of-

network reimbursements.

23.     For a subclass of California ASCs, Defendants also have committed unfair, unlawful and/or fraudulent business acts and practices in violation of California Business and Professions Code § 17200 *et seq.*

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States; pursuant to 18 U.S.C. § 1964(c), because the action concerns violations of RICO; and pursuant to 29 U.S.C. § 1332, because the action seeks to enforce rights under ERISA.

25.     This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b), and 18 U.S.C. § 1965, because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District, and because one or more of the Defendants conducts a substantial amount of business in this Judicial District.

## THE PARTIES

26.     Plaintiff Downey is, and at all relevant times mentioned herein was, a California corporation organized and existing under the laws of the State of California, with its principal place of business in Downey, California.  Downey is, and at all relevant times mentioned herein was, an ASC providing medical and surgical services in Downey, California.  At all relevant times mentioned herein, Downey was not contracted with any of the Defendants, or participating in any of their provider networks.

27.     Plaintiff Tarzana is, and at all relevant times mentioned herein was, a California corporation organized and existing under the laws of the State of California, with its principal place of business in Tarzana, California.  Tarzana is, and at all relevant times mentioned herein was, an ASC providing medical and

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

Case 2:12-cv-08916-PSG-FFM Document 26-1 Filed 02/10/13 Page 10 of 76 Page ID
#:220
Case 2:09-cv-05457-PSG Document 65 Filed 08/07/10 Page 10 of 76

surgical services in Tarzana, California. At all relevant times mentioned herein, Tarzana was not contracted with any of the Defendants, or participating in any of their provider networks.

28. Plaintiffs are informed and believe that Defendant UnitedHealth Group, Inc. ("UnitedHealth") is a Minnesota corporation with its corporate headquarters located in Minneapolis, Minnesota. UnitedHealth is one of the largest health carriers in the United States.

29. Plaintiffs are informed and believe that Defendant United HealthCare Services, Inc. ("United HealthCare") is a Minnesota corporation with its corporate headquarters located in Minneapolis, Minnesota. United HealthCare is wholly-owned by UnitedHealth, and serves as UnitedHealth's operating division. United HealthCare is licensed to conduct insurance operations in California and, on information and belief, every other State in the United States, whether it be under the name United HealthCare or some other operating name.

30. Plaintiffs are informed and believe that Defendant Ingenix, Inc. ("Ingenix") is a Delaware corporation with its corporate headquarters located in Eden Prairie, Minnesota. Ingenix is a wholly-owned subsidiary of UnitedHealth. Ingenix is registered to do business in California.

31. Plaintiffs are informed and believe that Defendant United Healthcare Insurance Company (UHIC) is a wholly owned and controlled subsidiary of UnitedHealth with its principal place of business in Connecticut.

32. UnitedHealth, United HealthCare, UHIC, and Ingenix will be collectively referred to herein as "United" or the "United Defendants."

33. Allied Holdings, on its behalf and its subsidiaries including Axis Group and Allied Automotive Group, Employee Welfare Benefit Plan (the "Allied Plan"), is an ERISA plan capable of being sued under ERISA § 502(d). 29 U.S.C. § 1132(d).

34. Plaintiffs are informed and believe that Defendant Allied Holdings Inc.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  is a Georgia corporation with its corporate headquarters located in Decatur, Georgia.

2  Plaintiffs are informed and believe that Allied Holdings is a plan sponsor and/or

3  plan administrator for the Allied Plan.

4       35.    Plaintiffs are informed and believe that Defendant Best Buy Flexible

5  enefits Plan (Best Buy Plan) is an ERISA plan capable of being sued under ERISA §

6  502(d).  29 U.S.C. § 1132(d).

7       36.    Plaintiffs are informed and believe that Defendant Best Buy Co., Inc. is

8  a Minnesota corporation with its corporate headquarters located in Richfield,

9  Minnesota.  Plaintiffs are informed and believe that Best Buy Co., Inc. is a plan

10  sponsor and/or plan administrator for the Best Buy Plan.

11       37.    Plaintiffs are informed and believe that Defendant Cingular Wireless

12  Medical Plan (the "Cingular Plan") is an ERISA plan capable of being sued under

13  ERISA § 502(d).  29 U.S.C. § 1132(d).

14       38.    Plaintiffs are informed and believe that Defendant AT&T Mobility

15  LLC is a Delaware corporation with its corporate headquarters located in Atlanta,

16  Georgia.  Plaintiffs are informed and believe that AT&T Mobility is a plan sponsor

17  and/or plan administrator for the Cingular Plan.

18       39.    Plaintiffs are informed and believe that Defendant Pacific Telesis

19  Group Health Care Network Plan (Pacific Telesis Plan) is an ERISA plan capable of

20  being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

21       40.    Plaintiffs are informed and believe that Defendant AT&T Medical

22  Expense Plan (AT&T Plan) is an ERISA plan capable of being sued under ERISA §

23  502(d).  29 U.S.C. § 1132(d).

24       41.    Plaintiffs are informed and believe that Defendant AT&T Corp. is a

25  New York corporation with its corporate headquarters located in Bedminster, New

26  Jersey.  Plaintiffs are informed and believe that AT&T Corp. is a plan sponsor

27  and/or plan administrator for the Pacific Telesis Plan and AT&T Plan.

28       42.    Plaintiffs are informed and believe that Defendant Cintas Corporation

Case 2:12-cv-08916-PSG-FFM   Document 26-1   Filed 02/10/13   Page 12 of 76   Page ID
#:222
Case 2:08-cv-05467-PSG   Document 65   Filed 08/07/10   Page 12 of 76   Page ID

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  Employee Health Benefit Plan (the "Cintas Health Plan") is an ERISA plan capable
2  of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

3      43.    Plaintiffs are informed and believe that Defendant Cintas Corporation
4  Group Insurance Plan (the "Cintas Insurance Plan") is an ERISA plan capable of
5  being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

6      44.    Plaintiffs are informed and believe that Defendant Cintas Corporation
7  ("Cintas") is a Washington corporation with its corporate headquarters located in
8  Mason, Ohio.  Plaintiffs are informed and believe that Cintas is a plan sponsor
9  and/or plan administrator for the Cintas Health Plan and Cintas Insurance Plan.

10      45.    Plaintiffs are informed and believe that Defendant GE Life, Disability
11  and Medical Plan (the "GE Plan") is an ERISA plan capable of being sued under
12  ERISA § 502(d).  29 U.S.C. § 1132(d).

13      46.    Plaintiffs are informed and believe that Defendant General Electric
14  Company ("GE") is a New York corporation with its corporate headquarters located
15  in Fairfield, Connecticut.  Plaintiffs are informed and believe that GE is a plan
16  sponsor and/or plan administrator for the GE Plan.

17      47.    Plaintiffs are informed and believe that Defendant J.C. Penney
18  Corporation, Inc. Health & Welfare Benefits Plan (J.C. Penney Plan) is an ERISA
19  plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

20      48.    Plaintiffs are informed and believe that Defendant J.C. Penney
21  Corporation, Inc. Benefits Administration Committee is a Delaware corporation
22  with its corporate headquarters located in Plan, Texas.  Plaintiffs are informed and
23  believe that J.C. Penney Corporation, Inc. Benefits Administration Committee is a
24  plan sponsor and/or plan administrator for the J.C. Penney Plan.

25      49.    Plaintiffs are informed and believe that Defendant Parker Hannifin
26  Corporation Group Insurance Plan (Parker Plan) is an ERISA plan capable of being
27  sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

28      50.    Plaintiffs are informed and believe that Defendant Parker Hannifin

Case 2:12-cv-08916-PSG-FFM Document 26-1 Filed 02/10/13 Page 13 of 76 Page ID
#:223
Case 2:08-cv-05467-PSG Document 65 Filed 08/07/10 Page 13 of 76

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  Corporation is an Ohio corporation with its corporate headquarters located in

2  Cleveland, Ohio.  Plaintiffs are informed and believe that Parker Hannifin

3  Corporation is a plan sponsor and/or plan administrator of the Parker Plan.

4      51.    Plaintiffs are informed and believe that Defendant Zale Corporation

5  Benefits Plan (Zale Plan) is an ERISA plan capable of being sued under ERISA §

6  502(d).  29 U.S.C. § 1132(d).

7      52.    Plaintiffs are informed and believe that Defendant Zale Corporation is a

8  Delaware corporation with its corporate headquarters located in Irving, Texas.

9  Plaintiffs are informed and believe that Zale Corporation is a plan sponsor and/or

10  plan administrator of the Zale Plan.

11      53.    The Defendants identified in paragraphs 33 through 52 are being sued

12  both in their individual capacities and as representatives of the Defendant Class, as

13  defined below.  They will be referred to herein as the "Representative ERISA Plan

14  Defendants."

15      54.    The true names and capacities of the defendants sued herein as DOES

16  are unknown to Plaintiffs at this time, and Plaintiffs therefore sue such defendants

17  by such fictitious names.  Plaintiffs are informed and believe that the DOES are

18  those individuals, corporations and/or businesses or other entities that are also in

19  some fashion legally responsible for the actions, events and circumstances

20  complained of herein, and may be financially responsible to Plaintiffs for the

21  services they have provided, as alleged herein.  The Complaint will be amended to

22  allege the DOES' true names and capacities when they have been ascertained.

23      55.    The United Defendants, the Representative ERISA Plan Defendants,

24  the Defendant Class and each of its members, and the DOES will be collectively

25  referred to herein as the "Defendants."

26  ## GENERAL ALLEGATIONS

27  **The Defendants' Roles and Responsibilities With Respect To Claims**

28      56.    United is one of the nation's largest health insurers.  It underwrites and

Case 2:12-cv-08916-PSG-FFM Document 26-1 Filed 02/10/13 Page 14 of 76 Page ID
#:224
Case 2:09-cv-05457-PSG Document 65 Filed 08/07/10 Page 14 of 76

issues thousands of health insurance plans.  It also contracts with other entities

which provide health benefits in order to provide claim pricing and other

administrative services for those entities' health plans.

57.     Individuals and families who do not receive employer-sponsored health

insurance often purchase health insurance policies directly from United, who

typically has sole responsibility and discretion to administer and pay claims

submitted under such policies.

58.     Some people receive their health benefits through government-

sponsored plans, welfare trusts and other sources.  United contracts to provide

claims pricing and administrative services for those plans, and makes its "network"

of providers available to these plans.

59.     People who receive their health insurance through a private employer-

sponsored benefit plan are typically participants or beneficiaries of plans governed

by ERISA.  Sometimes the ERISA plans are fully insured by health insurers like

United, and sometimes they are self-funded.  In both cases, United's "network" of

providers is generally available to the ERISA plans.

60.     When the ERISA plan is insured by United, United not only is

responsible for administering a claim brought under the plan, but also is financially

responsible for the payment of the claim.  United is the Plan Administrator, and an

ERISA fiduciary, for such ERISA plans.  United provides plan members with plan

documents, interprets and applies the plan terms, makes coverage and benefits

decisions, handles appeals of coverage and benefits decisions, and provides for

payment in the form of medical reimbursements.

61.     When the ERISA plan is self-funded, the plan typically will enter into

an "administrative service agreement" with a health insurer like United to perform

certain administrative responsibilities, such as providing plan members with plan

documents, interpreting and applying the plan terms, making coverage and benefits

decisions, handling appeals of coverage and benefits decisions, and providing for

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

Case 2:12-cv-08916-PSG-FFM Document 26-1 Filed 02/10/13 Page 15 of 76 Page ID
#:225
Case 2:08-cv-05467-PSG Document 65 Filed 08/07/10 Page 15 of 76

payment in the form of medical reimbursements. The administrative services agreements appoint United as an ERISA fiduciary, and delegate to United authority and responsibility to administer claims and make final benefits decisions, based on claim procedures and standards that United develops. United collects administrative services fees from the ERISA Plans. Plaintiffs are informed and believe that, under the administrative services agreements, the ERISA Plans remain responsible for funding the plans and the payment of benefits.

62. With respect to certain ERISA Plans that are self-funded, but which do not specifically designate a Plan Administrator, Plaintiffs are informed and believe that United has functioned as the *de facto* Plan Administrator. With respect to those ERISA plans which designate members of the Defendant Class as the Plan Administrator, Plaintiffs are informed and believe that United has functioned as the co-plan administrator. In both cases, United functions as a Plan Administrator insofar as it exercised a delegated authority to provide plan documents to participants, receive benefit claims, evaluate and process those claims, review the terms of the plan, make initial benefit determinations, make and administer benefit payments, handle appeals of benefit determinations, and serve as the primary point of contact for members and providers to communicate regarding benefits and benefit determinations. In carrying out these Plan Administrator functions, United possessed authority and fiduciary discretion to manage and administer the ERISA Plans.

**UCR Reimbursement To Out-Of-Network Ambulatory Surgery Centers**

63. Some ASCs have written contracts with United, under which they agree to accept reimbursement that is discounted from the ASC's total billed charges, in exchange for the benefits of being a participating or "in-network" provider. These benefits typically include an increased volume of business, because the health plans provide financial incentives to their members to utilize the services of "in-network" providers, such as reduced co-insurance payments and/or deductibles.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA, 90067-2517
TEL. (310) 551-8111 • FAX: (310) 551-8181

Case 2:12-cv-08916-PSG-FFM Document 26-1 Filed 02/10/13 Page 16 of 76 Page ID
#:226
Case 2:08-cv-05457-PSG-... Document 65 ... Filed 08/07/... Page 16 of 76

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

64.     Conversely, some ASCs, such as Downey and Tarzana, do not have written contracts with United.  They are "out-of-network."  As a result, these ASCs receive less volume of patients from the plans, but they are not required to accept reduced amounts on their charges for the services rendered.

65.     Some health plans, such as Preferred Provider Organizations ("PPOs"), indemnity plans and others, permit their members to access health care providers who are outside the "network."  Plans which offer coverage for out-of-network services, including the services of ASCs, are marketed to prospective members as benefiting them with the freedom and flexibility to choose the health care provider of their choice, including out-of-network providers.  These plans charge members a higher premium or contribution in exchange for this purported freedom of choice.

66.     Whether the claims are from out-of-network ASCs or from in-network ASCs, the claims reflect the actual billed charge for the claim.  Even though in-network ASCs sometimes are reimbursed according to contracted rates that include discounts, they still submit their full billed charges on the claim.  This is industry standard for all providers, and reflects the well-established fact that charges are not the same as discounted contract rates.  Therefore, United has for many years acquired a wealth of charge data from which it could price claims through a proper comparison of prevailing charges for similar healthcare services by similar types of ASCs within the same geographical market at the time.

67.     United and the Defendant Class, through the plan documents, marketing materials, EOBs, appeal letter, and in oral statements, represent to the Plaintiff Class, and the members with out-of-network access, that the plans will pay for out-of-network ASC services in an amount that is the lower of either the provider's actual billed charge, or the UCR amount.  Indeed, on its website, United states that it "will pay based on language in the member's health plan that in most cases requires the amount to be the lower of either:

- the out-of-network provider's actual charge billed to the member, or

Case 2:12-cv-08916-PSG-FFM  Document 26-1  Filed 02/10/13  Page 17 of 76  Page ID
#:227
Case 2:09-cv-05457-PSG  Document 65  Filed 08/07/10  Page 17 of 76

- 'the reasonable and customary amount,' 'the usual, customary, and reasonable amount,' 'the prevailing rate,' or other similar terms that base payment on <u>what other healthcare providers in a geographic area charge for their services</u>." [Emphasis added.][2]

68.　For decades, commercial payors like United have purported to reimburse for out-of-network services according to the UCR rate.  Reimbursement at the UCR rate has become so-well established that some states, including California, now require certain health plans to reimburse out-of-network services at rates using criteria that parallel the industry-standard for determining UCR.  *See, e.g.,* 28 C.C.R. § 1300.71(a)(3)(B) (referring to prevailing provider rates **charged** in the general geographic area in which the services were rendered); Fla. Stat. Ann. § 641.513(5) (referring to "usual and customary provider **charges**" for similar services in the community where the services were provided).  Because the industry standard traditionally has been for reimbursement according to a UCR rate, out-of-network ASCs and their patients who are members of plans insured and/or administered by United reasonably expect claims to be  reimbursed pursuant to a proper methodology that is based on UCR.

## United's Improper Pricing Methodologies

69.　Plaintiffs are still in the process of investigating and discovering the methods that United and the other Defendants used, and continue to use, for pricing and reimbursing out-of-network ASC claims.  It is clear, however, that United has failed to implement an appropriate methodology for establishing the UCR amount.  None of United's methods are based on a review of the prevailing or competitive charges for similar healthcare services by similar types of providers within the same

---

[2] As of the date of filing this Amended Complaint, the above-referenced statements could be found at: www.uhc.com/legal/payment_of_out_of_network_benefits.htm.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

Case 2:12-cv-08916-BSG-FFM Document 26-1 Filed 02/10/13 Page 18 of 76 Page ID
#:228
Case 2:09-cv-05457-PSG Document 65 Filed 08/07/10 Page 18 of 76

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1 geographical area at the time.

2     70.    It is arbitrary, capricious and improper for Defendants to use contract rates for establishing reimbursement rates absent a contract. Yet, this is exactly what Defendants do when they pay out-of-network ASC claims using United's "highest in-network rate" and MNRP methods.

    71.    Plaintiffs are informed and believe that both the "highest in-network rate" method and the MNRP method are derived from Medicare rates set by CMS. Medicare constitutes the largest contracted payor in the country, since each provider wishing to participate in the Medicare program must sign a contract agreeing to accept Medicare rates for Medicare beneficiaries. Medicare rates also are set by the federal government, solely for use as a payor of last resort to cover elderly and disabled individuals, based largely within the limits of the annual Congressional budgets for the Medicare program, and regardless of what the market rate would be for non-Medicare services provided at particular ASCs. Thus, using Medicare rates for out-of-network claims for services provided to non-Medicare beneficiaries fails to take into consideration the necessary factors for determining the UCR rate, and does not compare actual charges with usual, customary or competitive charges for the same or similar service in the relevant geographic area.

    72.    United knows that Medicare rates are not a proper basis for determining UCR. On its own website, where United explains that most plans pay out-of-network benefits according to a "reasonable and customary amount" using the Ingenix Database, United explains the variety of factors that even it purports to believe should be are taken into account in determining the reasonable and customary amount. Medicare rates are <u>not</u> included among these factors. Indeed, United admits that "reasonable and customary," "usual, customary, and reasonable," "prevailing rate" and other synonymous terms for UCR "do not apply to [different

Case 2:12-cv-08916-PSG-FFM Document 26-1 Filed 02/10/13 Page 19 of 76 Page ID
#:229
Case 2:09-cv-05457-PSG-VBK Document 65 Filed 08/07/13 Page 19 of 76

1  kinds of] plans with payment based solely on Medicare rates."[3]

2     73.    It also is arbitrary, capricious and improper for Defendants to use the

3  Ingenix Database for establishing UCR rates, if that is what United used.  While the

4  sources of information collected for the Ingenix Database are asserted by

5  Defendants to be trustworthy charge data collected from health insurers and other

6  industry sources, Plaintiffs are informed and believe that the Ingenix Database

7  contains numerous flaws, including, but not limited to:

8      a)  Using data which is not representative of charges within a geographic

9          area;

10      b)  Using data which does not reflect the charges of providers with any

11          particular degree of expertise or specialization;

12      c)  Using data which is not based upon comparable services;

13      d)  Using data which is not based on the details of the type of facility;

14

15      e)  No determination of the numbers or types of providers in any

16          geographic area;

17      f)  Subjection to pre-editing and "scrubbing" by data contributors such as
       the health insurers who have a financial incentive to skew the data

18          downward;

19

20      g)  No determination of the actual types of procedures within a geographic
       area;

21

22      h)  Collection of charge data which is not representative of the actual
       number of procedures performed within a geographic area;

23

24      i)  Insufficient collection of provider-specific data to enable its users to
       determine whether the charges are from one provider, from several

25          providers, or from only a minority or specific subset of the providers in

26

27  [3] As of the date of filing this Amended Complaint, the above-referenced statements
    could be found at: www.uhc.com/legal/payment_of_out_of_network_benefits.htm.

28

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

AMENDED CLASS ACTION COMPLAINT
Exh. D, Page 106

a geographic area;

j)  No collection of patient specific information such as age or medical history or condition;

k)  No determination of the most common charge for the same service or comparable service or supply;

l)  No determination of the place of service or type of facility;

m) Insufficient data collection for determining an appropriate geographic medical market for comparing like charges;

n)  Combining zip codes inappropriately and using zip codes instead of appropriate geographic medical markets;

o)  Combining all provider charges by procedure code without regard to factors such as use of resources and other costs to the provider;

p)  No comparison of procedures of the same or similar complexity by, among other things, recording or accounting for applicable procedure code modifiers;

q)  No use of an appropriate statistical methodology;

r)  No proper consideration of charging protocols and billing practices generally accepted by the medical community or specialty groups;

s)  No proper consideration of medical costs in setting geographic areas;

t)  Lack of quality control, such as basic auditing, to ensure the validity, completeness, representation, and authenticity of the data submitted;

u)  Reporting of charges that are systemically skewed downward;

v)  Using relative values and conversion factors to derive inappropriate UCR amounts;

w) Not applying appropriate inflation factors when using older charge data.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

Case 2:12-cv-08916-PSG-FFM Document 26-1 Filed 02/10/17 Page 21 of 76 Page ID
#:231
Case 2:09-cv-05457-PSG Document 65 Filed 08/07/09 Page 21 of 76

74.     Plaintiffs are informed and believe that, at all relevant times, the other Defendants, including the Defendant Class members, relied on and agreed with United to use flawed reimbursement methodologies to systematically underpay claims submitted by the Plaintiff Class instead of paying based on UCR.

### The Defendants' False Representations Of UCR Reimbursement

75.     Throughout the Class Period, Plaintiffs provided out-of-network ASC services to patients who are members of health plans or policies that Defendants insured, funded, sponsored and/or administered.  The harm being inflicted on Plaintiffs by the Defendants' unlawful business practices is typical of that being suffered by members of the Plaintiff Class.

76.     Patients treated by Downey and Tarzana expect their health plans to accurately and appropriately reimburse them for their services based on UCR.  To ensure direct payment from the Defendants, Plaintiffs routinely obtain an assignment of benefits from the members in advance of the surgery.  This assignment expressly authorizes the Defendants to pay by check made payable directly to Plaintiffs for the medical and surgical benefits allowable, and otherwise payable to the member under the plan, as payment toward the total charges for the services rendered.  Thus, the members assigned their healthcare benefits, and the correlative rights arising from these benefits, to Plaintiffs.  This is a standard industry practice among healthcare providers, and the assignment of benefits obtained by Plaintiffs is typical of that obtained by members of the Plaintiff Class.

77.     Prior to providing the services, Plaintiffs, as is typical of all ASCs, first calls the patient's health plan to verify that the patient is an eligible member.  Known as the "verification of benefits," this phone call is how the provider determines whether the patient has out-of-network benefits and, if so, what those benefits consist of, prior to agreeing to provide the services.

78.     As is typical of all ASCs, when verifying benefits, Plaintiffs' employees

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

Case 2:12-cv-08916-PSG-FFM Document 26-1 Filed 02/10/17 Page 22 of 76 Page ID
#:232
Case 2:09-cv-05457-PSG Document 65 Filed 08/07/10 Page 22 of 76

1    call the phone number provided on the members' health insurance cards.  Plaintiffs

2    are informed and believe that the number provided on the cards is for United

3    Healthcare, and therefore the representatives who answer Plaintiffs' calls are United

4    employees.  Plaintiffs are informed and believe that responding to verification of

5    benefit calls is one of the administrative services that United provides to the

6    Defendant Class.

7          79.    In response to Plaintiffs' inquiry about out-of-network benefits, United,

8    on behalf of itself and, in relevant cases, on behalf of the Defendant Class members,

9    routinely informs Plaintiffs that the member has out-of-network benefits at a

10   particular percentage.  Industry standard is that the percentage is of UCR.  A United

11   representative will tell Plaintiffs' employees that the particular member's out-of-

12   network benefits are, for example, "60% of UCR," "60% of reasonable and

13   customary," or something similar which, in the industry context, and in light of the

14   common course of dealing between a provider and payor, all mean the same thing,

15   *i.e.*, that the plans pay out-of-network benefits according to a UCR rate.  The

16   representations made to Plaintiffs concerning reimbursement of out-of-network

17   benefits during the verification of benefits calls is typical of the representations

18   made to the Plaintiff Class, as described in examples set forth below.

19         80.    At all relevant times, Plaintiffs submitted the appropriate claim forms

20   for payment to United.  The claim forms include information such as the type of

21   procedure, the coding for the procedure, the fact that Plaintiffs are assignees of the

22   member benefits, and other information by which the claim can be processed and

23   paid.  The claim form also includes Plaintiffs' billed charges.  These bills are

24   submitted on industry standard forms, commonly known as Uniform Billing ("UB")

25   forms.

26         81.    As is typical with all ASCs in the Plaintiff Class, Plaintiffs' billed

27   charges are competitive with both other out-of-network ASCs and in-network ASCs

28   in the same geographic region in which Plaintiffs provide services.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL. (310) 551-8111 • FAX: (310) 551-8181

Case 2:12-cv-08916-PSG-FFM Document 26-1 Filed 02/10/13 Page 23 of 76 Page ID
Case 2:09-cv-05457-PSG Document 65 Filed 08/07/10 Page 23 of 76 Page ID
#:233

82.     The "charge" amount that a healthcare provider submits on a reimbursement claim is the same regardless of whether the payor is an an out-of-network payor, an in-network payor, a government payor, or a private payor.  This also is industry standard.

83.     In accordance with the assignment of benefits, after processing Plaintiffs' claim, either United or a Plan Defendant routinely sends the reimbursement check and an accompanying EOB directly to Plaintiffs through the U.S. mail, thereby acknowledging their status as the beneficiary and "claimant" for benefits.

84.     The EOBs that the Defendants send to Plaintiffs and the members usually represent that out-of-network benefits are calculated based on the UCR rate.  The EOBs list the billed charge and the amount of the charge being "allowed."  The payment amount is the particular percentage of the "allowed amount," minus any applicable deductibles and copayments.  The EOBs are written so that the "allowed amount" appears to be the UCR rate, because the EOBs typically will say:

> Your plan covers reasonable charges for therapeutic treatment of sickness or injury.  <u>The reasonable **charge** is based on amounts **charged** by other providers for similar services or supplies.</u>  [Emphasis added.]

Plaintiffs are informed and believe that the other members of the Plaintiff Class received EOBs containing substantially similar statements that carry the same meaning in the industry.

85.     Plaintiffs frequently spoke with United representatives during the course of appealing a claim that Plaintiffs believed was not paid correctly, and typically was told benefits had been determined based on the UCR rate, sometimes adding that it utilized prevailing provider charge data maintained by Ingenix.

86.     Similarly, letters sent through the U.S. mail by United Healthcare to Plaintiffs and the patients during the course of administratively appealing claims

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

expressly represented that reimbursement was based on the UCR rate, and often
added that it had been derived from a database of prevailing provider charges
maintained by Ingenix. United's representations frequently identify the Ingenix's
Database as consisting of the PHCS database. These statements often purported to
include pertinent details, but not the true details for how United priced the claim.

87. United has sent substantially similar letters to other members of the
Plaintiff Class, as well as their patients, and Plaintiffs are informed and believe that
substantially similar letters are typically sent to all members of the Plaintiff Class.

88. The oral communications and written correspondence between
Defendants and Plaintiffs and the Patient Class routinely fail to disclose the use of
the "highest in-network rate" or MNRP methodologies as the method for pricing the
claim.

89. With respect to the claims that United administers for the Defendant
Class, Plaintiffs are informed and believe that the Defendant Class members, and
each of them, know that United makes these representations to the Plaintiff Class
and, in fact, authorize United to make such statements pursuant to the authority
delegated to United in the administrative services agreements.

90. The Defendants' representations that the Plaintiffs' claims were
reimbursed based on UCR rates were false. From the time United responds to
verification of benefits calls, to the time United and the other Defendants deny
appeals, the Defendants have routinely and systematically misrepresented that out-
of-network benefits are reimbursed according to the UCR rate. Plaintiffs are
informed and believe that all of the members of the Plaintiff Class were falsely told
by Defendants that out-of-network benefits are reimbursed based on the UCR rate.

91. Although United has stated in the course of this lawsuit that it is
United's practice and policy not to utilize or rely on data from the Ingenix Database
in adjudicating and reimbursing claims for any out-of-network ASC claims, even
after taking such position in this lawsuit, United made further representations to

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

Downey and its patients that United relied on the Ingenix Database to price Plaintiffs' claims, and furthermore has revealed that United has used the Ingenix Database to price some out-of-network ASC claims.

### The Harm Caused To The Plaintiff Class

92. Plaintiffs are informed and believe that, and thereon allege, that all of the claims which were underpaid to Plaintiffs and the Plaintiff Class involve plans in which out-of-network benefits for ASCs are meant to be paid at amounts based on the UCR rate. It is an abuse of its discretion and fiduciary duties for Defendants to calculate out-of-network benefits according to in-network rates, Medicare rates, the flawed Ingenix Database, or some other methodology which does not adequately compare charges of similarly-situated providers in the same geographic area at the time.

93. By using the flawed and inappropriate methodologies to price and pay out-of-network ASC claims, the Defendants have systematically underpaid the Plaintiff Class. As United stated in the EOBs, and as it markets on its own website, UCR calculations are supposed to be based upon a comparison of a provider's **charges** to the **charges** of other similarly situated providers within the same geographic region at the time. By using its flawed pricing methodologies, including by relying on Medicare schedules, to pay out-of-network ASC claims, United did not base its pricing and payments to the Plaintiff Class based upon the ASC's charges. As a result, the Defendants drastically underpriced and underpaid the claims.

94. Moreover, United intentionally led Plaintiffs and the Plaintiff Class to believe that benefits were determined based on a UCR rate. As alleged above, when Plaintiffs contacted United to verify out-of-network benefits, United routinely represented that benefits were available at a UCR rate. Despite United's representations during the verification of benefits process, the Defendants rarely paid Plaintiffs at the represented percentage of UCR, and instead improperly priced

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

Exh. D, Page 112

Case 2:09-cv-05457-PSG -CW   Document 65   Filed 08/07/10   Page 26 of 76

the Plaintiffs' claims based on arbitrary, capricious, and improper methodologies.

95.    Furthermore, the EOBs, appeal denial letters, and other communications from United represented that benefits were in fact determined based on the UCR rate.  At no point did United disclose its pricing methodologies which are not based on a proper calculation of UCR.

96.    As a result of Defendants' affirmative misrepresentations, and their concealment of the true manner in which they reimbursed out-of-network ASC claims, Plaintiffs were induced into agreeing to incur significant expenses in order to provide their services to the members of Defendants' health plans.  Plaintiffs are informed and believe that their experience is typical of the Plaintiff Class.

97.    To illustrate, Defendants have in many cases paid Downey vastly different percentages of charges for parallel procedures performed under similar circumstances that were billed at comparable charges, with no explanation by Defendants for the significant discrepancy.  For example:

    a) For patient 1[4], Downey charged $6,978.12 for an esophagogastroduodenoscopy ("EGD"), also known as an upper endoscopy, performed in 2008.  Downey was informed that the patient's plan covered 60% of charges.  UnitedHealth in this instance accurately paid $4,186.87 (60%).  That shows that, for this claim, United agreed that Downey's full billed charges were reasonable and customary.

    b) For patient 2, Downey charged $7,694.51 for an EGD performed in 2006.  Downey was informed that the patient's plan covered 60% of charges.  But UnitedHealth only paid $1,168.20 (15%).

---

[4]  Patient names have been changed to numbers to preserve patient confidentiality.  Downey has already provided the United Defendants with the patient names.  Plaintiffs will further disclose patient identity pursuant to protective order on an as-need basis.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

Exh. D, Page 113

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

c) For patient 3, Downey charged $12,664.95 for an EGD (with possible biopsy) performed in 2007. Downey was informed that the patient's plan covered 50% of charges. But UnitedHealth only paid $382.90 (3%).

d) For patient 4, Downey charged $12,235.95 for an EGD (with possible biopsy) performed in 2008. Downey was informed that the patient's plan covered 80% of charges. But UnitedHealth only paid $1,557.60 (12.7%).

e) For patient 5, Downey charged $12,699.95 for an EGD (with possible biopsy) performed in 2009. Downey was informed that the patient's plan covered 80% of charges. But UnitedHealth only paid $1,339.83 (10.5%).

98. Plaintiffs are informed and believe that the low and inconsistent payments for patients 2-5 were based on United's flawed methodologies which failed to take into account the correct UCR criteria.

99. At all relevant times, the Defendants used improper methodologies to systematically under-price the true market rates of services rendered by Plaintiffs. These improper methodologies were not disclosed by Defendants, and their details were deliberately kept off limits to their own members and the ASCs who provided healthcare services. This has caused harm to both Plaintiffs and their patients.

100. Plaintiffs suffer direct harm by incurring expenses to provide the services, and then are forced into the position of incurring further expenses seeking correct reimbursement from Defendants and having to attempt to collect amounts from patients that the patients justifiably believe should be covered by their plans. Plaintiffs are informed and believe that the patients also reasonably expected that their health insurance, which gave them the freedom to choose out-of-network providers, would properly calculate and pay out-of-network benefits according to UCR. Plaintiffs often are unable to collect balances from the patients, thereby having to take a loss for their services. Plaintiffs also suffer a loss on the costs of

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA, 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

1  supplies, space, equipment, etc. that Plaintiffs expend to provide the service.
2  Plaintiffs' harm is typical of what members of the Plaintiff Class experienced.

3       101.   By falsely representing that the patients are liable for amounts which
4  the patients in fact do not owe, and by forcing the ASCs to pursue payments from
5  their patients, Defendants' illegal and improper actions also have harmed the
6  relationships that Plaintiffs and members of the Plaintiff Class have with their
7  patients, making it difficult for the Plaintiff Class to operate their businesses.

8       102.   Defendants' illegal actions also have harmed the relationships that
9  Plaintiffs and members of the Plaintiff Class have with the surgeons who perform
10 the outpatient surgeries.  For example, United has improperly threatened to cancel
11 the contracts of physicians who refer members to Downey, thereby denying the
12 choice to access care out-of-network that is promised by the plans.  Plaintiffs are
13 informed and believe that the other Defendants knew that United made such threats,
14 and encouraged those threats.

15      103.   Plaintiffs are informed and believe that, through acts of boycott,
16 coercion and intimidation, Defendants intentionally seek to ruin their ability to
17 compete outside United's "network," and seek to force Plaintiffs and other out-of-
18 network ASCs into accepting low in-network rates and/or agreeing to oppressive
19 contract terms.

20      104.   As a further result of the Defendants' wrongful business practices,
21 Plaintiffs are harmed by having to expend significant time and resources in trying to
22 appeal Defendants' underpayments.  As will be discussed in detail below,
23 Defendants' failure to provide a full and fair review of Plaintiffs' claims and appeals
24 rarely results in any additional payment.  The appeals of out-of-network ASCs like
25 Plaintiffs, including appeals sent directly by the patient, are rendered futile due to
26 the Defendants' systematic misrepresentations intended to conceal the true methods
27 that United uses to price the claims.  Like Downey and Tarzana, the members of the
28 Plaintiff Class were similarly harmed by being forced to expend significant time and

1    resources futilely appealing the Defendants' underpayments.

2       105.   The members who have obtained, and want to obtain, services from the

3 Plaintiff Class are harmed because the Defendants refuse to reimburse out-of-

4 network ASC services according to a proper determination of UCR, which leads to

5 the ASCs having to bill the members and seek to collect from them amounts that the

6 members justifiably believe would be covered by their health insurance. The

7 members therefore become liable to the Plaintiff Class for amounts that should be

8 covered by Defendants were the claims being priced and paid according to UCR

9 rates.

10 **CLASS ACTION ALLEGATIONS**

11 **THE PLAINTIFF CLASS AND CALIFORNIA SUBCLASS**

12       106.   Downey and Tarzana bring this action on behalf of themselves and all

13 others similarly situated under Rule 23 of the Federal Rules of Civil Procedure. The

14 requirements of subparts 23(a) and (b)(1), (b)(2) and (b)(3) of the Federal Rules of

15 Civil Procedure are satisfied in this case.

16       107.   Plaintiffs bring this class action on behalf of the Plaintiff Class, defined

17 as:

18

19         All non-contracted ASCs within the boundaries of the

20         United States of America who, during the Class Period,
        provided services to any insured, member or enrollee of

21         United and/or of an ERISA Plan which contracted with
        United to administer claims, and were underpaid due to

22         United's failure to properly calculate the UCR rate under a
        plan providing for reimbursement of out-of-network ASC

23         services according to UCR.[5]

24

25 _____

26 [5] By "UCR," Plaintiffs mean the amount determined based generally on a review of
the prevailing or competitive charges for similar healthcare services by similar types

27 of providers within the same geographical area at the time, and includes what
Defendants may refer to as "Usual, Customary and Reasonable," "Reasonable and

28 (footnote continued)

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

29
AMENDED CLASS ACTION COMPLAINT
Exh. D, Page 116

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

108.   Plaintiffs also bring this action on behalf of themselves and on behalf of a California Subclass, defined as:

> All non-contracted ASCs within the boundaries of the State of California who, during the Class Period, provided services to any insured, member or enrollee of United and/or of an ERISA Plan which contracted with United to administer claims, and were underpaid due to United's failure to properly calculate the UCR rate under a plan providing for reimbursement of out-of-network ASC services according to UCR.

109.   The Class Period is defined as:

> The period in which United priced claims submitted by the Plaintiff Class using any methodology that does not properly establish payment based on UCR, through the date of certification.

### **Rule 23(a)**

#### *Numerosity*

110.   This putative plaintiff class includes hundreds, and likely thousands, of "out-of-network" ASCs throughout the United States, and is therefore so large as to make joinder of all members impracticable within the meaning of Rule 23(a)(1) of the Federal Rules of Civil Procedure.

#### *Commonality*

111.   Pursuant to Rule 23(a)(2) of the Federal Rules of Civil Procedure, there are questions of law or fact common to all class members, including, but not limited to, the following:

---

Customary," "Usual and Customary," "Reasonable Charge," "the Prevailing Rate," "the Usual Fee," "the Competitive Fee," or some other similar phrase that, in the context of the healthcare industry, means essentially the same thing.

a. Whether the Defendants have underpaid the Plaintiff Class for out-of-
network services based upon improper methodologies for pricing UCR
rates;

b. Whether the Defendants violated ERISA by using improper
methodologies for pricing and paying claims for out-of-network ASC
services;

c. Whether Defendants made false representations to the Plaintiff Class as
to how United priced the claims for out-of-network ASC services;

d. Whether the Defendants violated ERISA by falsely representing the
method that was used to pay the claims for out-of-network ASC
services, at the time such claims were paid;

e. Whether the Defendants violated ERISA by falsely representing the
method that was used to pay the claims for out-of-network ASC
services, at the time such claims were appealed;

f. Whether the Defendants violated ERISA by falsely representing that
the members owed the Plaintiff Class members amounts which should
have been paid by the Defendants, and are not the financial liability of
the members;

g. Whether the improper methodologies and systematic
misrepresentations employed by the Defendants made it futile for the
Plaintiff Class to appeal under ERISA;

h. Whether interest should be added to the payment of unpaid benefits;

i. Whether the Defendants violated RICO by making false statements
through the United States mail and/or interstate wires representing,
*inter alia*:

(i) that they would price and pay out-of-network ASC
claims according to UCR;

(ii) that they had accurately and appropriately
calculated the UCR amounts due the out-of-network
ASCs;

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL. (310) 551-8111  •  FAX. (310) 551-8181

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA, 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

(iii)  that they used the Ingenix Database in calculating the UCR amounts due the out-of-network ASCs; and

(iv)  that the members owed the non-contracted ASCs for all the amounts not paid by Defendants to the ASCs based on faulty determinations of UCR.

j.  Whether the Defendants conspired and/or aided and abetted each other in furtherance of the unlawful acts alleged herein;

k.  Whether Defendants' conduct in California violates California Business and Professions Code § 17200 *et seq.*

### *Typicality*

112.   The claims of Plaintiffs are typical of the claims of the defined Plaintiff Class, within the meaning of Rule 23(a)(3) of the Federal Rules of Civil Procedure, and are based on and arise out of the same uniform and standard illegal practices of the Defendants, as alleged herein by Plaintiffs.  The proposed Plaintiff Class representative states claims for which relief can be granted that are typical of the claims of absent Plaintiff Class members.  If litigated individually, the claims of each Plaintiff Class member would require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

### *Adequacy*

113.   Plaintiffs are committed to pursuing this action and are prepared to serve the proposed Plaintiff Class in a representative capacity with all of the obligations and duties material thereto.  Plaintiffs will fairly and adequately represent the interests of the members of the Plaintiff Class within the meaning of Rule 23(a)(4) of the Federal Rules of Civil Procedure, and will not have any interests adverse to, or that directly and irrevocably conflict with, the interests of the other Plaintiff Class members.

114.   Plaintiffs have retained competent counsel experienced in class action

litigation, which will adequately prosecute this action, and will assert, protect and otherwise well represent the named Class representatives and absent Plaintiff Class members.

## **Rule 23(b)**

115. The prosecution of separate actions by individual Plaintiff Class members would create a risk of adjudication with respect to individual Plaintiff Class members that would, as a practical matter, be dispositive of the interests of other members of the Plaintiff Class who are not parties to this action, or could substantially impair or impede their ability to protect their interests. Fed. R. Civ. P. 23(b)(1)(B).

116. The prosecution of separate actions by individual members of the Plaintiff Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Plaintiff Class which would establish incompatible rights within the Plaintiff Class. Fed. R. Civ. P. 23(b)(1)(A).

117. The Defendants' actions are generally applicable to the Plaintiff Class as a whole, and Plaintiffs seek equitable remedies with respect to the Plaintiff Class as a whole, within the meaning of Rule 23(b)(2) of the Federal Rules of Civil Procedure.

118. The common questions of law and fact enumerated above predominate over individual questions, and a class action is a superior method for the fair and efficient adjudication of this controversy, within the meaning of Rule 23(b)(3) of the Federal Rules of Civil Procedure. Common or general proof will be used for each member of the Plaintiff Class to establish each element of their claims based on RICO and ERISA. Additionally, proceeding as a class action is superior to other available methods of adjudication. The likelihood that individual members of the Plaintiff Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation, which exceeds what any one Plaintiff Class member has at stake.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

Case 2:12-cv-08916-PSG-FFM Document 26-1 Filed 02/10/13 Page 34 of 76 Page ID
Case 2:08-cv-05467-PSG Document 65 Filed 08/07/09 Page 34 of 76 Page ID
#:244

## THE DEFENDANT CLASS

119.  Plaintiffs bring this action against the Representative ERISA Plan Defendants and all others similarly situated under Rule 23 of the Federal Rules of Civil Procedure.  The requirements of subparts 23(a) and (b)(1) and (b)(2) of the Federal Rules of Civil Procedure are satisfied in this case.

120.  Plaintiffs bring this class action against the Defendant Class defined as:

> All ERISA plans and plan-designated ERISA Plan Administrators, within the boundaries of the United States of America, who during the Class Period contracted with, hired, retained or otherwise used United to administer, process, adjudicate, price, review and/or reimburse claims for services provided by non-contracted ASCs to a participant or beneficiary of an ERISA plan which provides for reimbursement of out-of-network ASC services based on UCR.

### Rule 23(a)

#### *Numerosity*

121.  This putative Defendant Class includes hundreds of ERISA Plans and ERISA Plan Administrators throughout the United States and is therefore so large as to make joinder of all members impracticable within the meaning of Rule 23(a)(1) of the Federal Rules of Civil Procedure.

#### *Commonality*

122.  Pursuant to Rule 23(a)(2) of the Federal Rules of Civil Procedure, there are questions of law or fact common to all Defendant Class members, including, but not limited to, the following:

    a.  Whether members of the Defendant Class underpaid the Plaintiff Class for out-of-network services based upon improper methodologies for pricing UCR rates;

    b.  Whether members of the Defendant Class made false representations to the Plaintiff Class as to how they calculated the payments for non-contracted ASC services;

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

c. Whether members of the Defendant Class have underpaid the Plaintiff Class for out-of-network services based upon the use of improper methodologies for calculating such payments;

d. Whether members of the Defendant Class violated ERISA by using improper methodologies for calculating the payments to nonparticipating ASCs;

e. Whether members of the Defendant Class violated ERISA by falsely representing to the ERISA beneficiaries and the non-contracted ASCs the method that was used to pay the claims for such ASCs, at the time such claims were paid;

f. Whether members of the Defendant Class violated ERISA by falsely representing to the ERISA beneficiaries and the non-contracted ASCs the method that was used to pay the claims for such ASCs, at the time such claims were appealed;

g. Whether members of the Defendant Class violated ERISA by falsely representing that the ERISA beneficiaries owed the non-contracted ASCs amounts which should have been paid by the Defendants, and are not the financial liability of the ERISA beneficiaries;

h. Whether the systems set up by members of the Defendant Class made it futile for Members of the ERISA Subclass to appeal under ERISA;

i. Whether members of the Defendant Class violated RICO by sending, or causing to be sent, false statements through the United States representing:

(i) that United and/or the Defendant Class members had accurately and appropriately calculated the amounts due the non-contracted ASCs;

(ii) that United used the Ingenix Database in calculating the amounts due the non-contracted ASCs; and

(iii) that the ERISA beneficiaries (patients) owed the non-contracted ASCs for all the amounts not paid by members of Defendant Class to the ASCs.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

j.  Whether members of the Defendant Class conspired and/or aided and abetted United and/or each other in furtherance of the unlawful acts alleged herein;

k.  Whether interest should be added to the payment of unpaid benefits.

*Typicality*

123.    The claims of Plaintiffs against the Representative ERISA Plan Defendants, and their defenses to Plaintiffs' claims, are typical of the defined Defendant Class, within the meaning of Rule 23(a)(3) of the Federal Rules of Civil Procedure, and are based on and arise out of the same uniform and standard illegal practices of the Defendants, as alleged herein by Plaintiffs. The claims against the proposed Representative ERISA Plan Defendants are typical of the claims for which relief can be granted against the absent members of the Defendant Class. If litigated individually, the claims and defenses involving each Defendant Class member would require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

*Adequacy*

124.    The Representative ERISA Plan Defendants, and any one of them, as representatives of ERISA plans and ERISA plan administrators that have contracted with United, will fairly and adequately protect the interests of the Defendant Class within the meaning of Rule 23(a)(4) of the Federal Rules of Civil Procedure, and will not have any interests adverse to, or that directly and irrevocably conflict with, the interests of the other Defendant Class members. The Representative ERISA Plan Defendants will be capable of vigorously defending the action, and are likely to retain competent counsel experienced in class action litigation, which will adequately defend the action, and will assert, protect and otherwise well represent the absent Defendant Class members.

**Rule 23(b)**

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

125.    The prosecution of separate actions by multiple plaintiffs against individual members of the Defendant Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Defendant Class which would establish incompatible rights within the Defendant Class.  Fed. R. Civ. P. 23(b)(1)(A).

126.    The prosecution of separate actions against individual Defendant Class members would create a risk of adjudication with respect to individual Defendant Class members that would, as a practical matter, be dispositive of the interests of other members of the Defendant Class who are not parties to this action, or could substantially impair or impede their ability to protect their interests.  Furthermore, without a Defendant Class, plaintiff is at risk of being put in the position of having to suffer a generalized loss as to absent members of the Defendant Class.  Fed. R. Civ. P. 23(b)(1)(B).

127.    The members of the Defendant Class, through their common agreements with United, their misrepresentations regarding UCR, and their unlawful underpayments of benefits, have acted in such a manner that is generally applicable to the Plaintiff Class, and therefore Plaintiffs seek injunctive and declaratory relief as to certain fundamental issues that will eliminate or reduce the need for ancillary or follow-up proceedings by members of the Plaintiff Class against members of the Defendant Class.  Fed. R. Civ. P. 23(b)(2).

128.    The common questions of law and fact enumerated above predominate over individual questions, and a class action is a superior method for the fair and efficient adjudication of this controversy, within the meaning of Rule 23(b)(3) of the Federal Rules of Civil Procedure.  Common or general proof will be used for each member of the Defendant Class to defend against the claims brought against Defendants.  Additionally, proceeding as a class action is superior to other available methods of adjudication.  The likelihood that individual members of the Defendant Class will seek to be prosecuted in separate actions is remote due to the time and

Case 2:12-cv-08916-PSG-FFM  Document 26-1  Filed 02/10/13  Page 38 of 76  Page ID
#:248
Case 2:09-cv-05457-PSG  Document 65  Filed 08/07/10  Page 38 of 76

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

expense necessary to conduct such litigation, and the risk to the members of the Defendant Class that a decision in favor of Plaintiffs on the merits of the class action will be controlling in actions brought against them individually.

## FIRST CLAIM FOR RELIEF

**Violations Of 18 U.S.C. § 1962(c)**
**Based On Predicate Acts Of Mail And Wire Fraud**
**(On Behalf Of Downey, Tarzana And The Plaintiff Class)**
**(Against The United Defendants)**

129. The allegations of the prior paragraphs of the Amended Complaint are hereby repeated as if fully set forth herein.

### The Enterprise

130. The United Defendants carried out their scheme to defraud Plaintiffs and the Plaintiff Class through the conduct of an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4). This association-in-fact enterprise is comprised of the United Defendants, the members of the Defendant Class, including the Representative ERISA Plan Defendants, and the DOE defendants (the "Enterprise").

131. The Enterprise has and continues to have an ascertainable structure and function separate and apart from the pattern of racketeering activity in which the United Defendants have engaged. The members of the Enterprise function as a structured and continuous unit, and performed roles consistent with this structure, including legitimate business activities. United and the members of the Defendant Class comprise "a group of persons associated together for a common purpose of engaging in a course of conduct." *Odom v. Microsoft Corporation*, 486 F. 3d 514, 552-553 (9th Cir. 2007). They are associated together for the purpose of processing and paying claims by healthcare providers for services provided to patients who are members of ERISA plans insured and/or administered by United.

132. **Common Purpose.** The purpose, function and course of conduct of

the Enterprise are for United to act as administrators for the Defendant Class. As alleged above, the members of the Defendant Class have hired United and/or entered into "administrative service agreements" with United to perform certain claims administrative responsibilities, such as providing plan members with plan documents, interpreting and applying the plan terms, making coverage and benefits decisions, handling telephone inquiries from providers concerning the benefits of patients, determining the UCR for out-of-network healthcare providers in various geographic regions of the country, calculating reimbursement on claims from providers, determining what information to put on EOBS, and in many cases sending such documents through the United States mail to providers and to patients, handling appeals of coverage and benefits decisions, and sending appeal response communications through the United States mail.

133. United, the Representative ERISA Plan Defendants and the other members of the Defendant Class share a common purpose of using systems and methodologies developed by Ingenix for undervaluing and underpaying claims by out-of-network ASCs to gain financially, and to force ASCs to accept unreasonably low contracted rates. The United Defendants furthered this common purpose of the Enterprise by sending EOBs and letters to ASCs and their patients through the mail which falsely stated that: (a) the United Defendants had accurately and appropriately calculated a UCR rate for ASCs (by comparing each ASCs charges with the charges of other ASCs in the same geographic area), when they had not; (b) representing to the ASCs and patients that the patients owed certain amounts to the ASCs, when in fact such amounts should have been paid by Defendants; and (c) United had used the Ingenix Database to price claims, when it had not.

134. **Ongoing Organization.** The Enterprise in this action is an ongoing organization, and is a vehicle for the commission of two or more predicate acts of mail and wire fraud. Through use of Ingenix's faulty claims administration systems to reimburse out-of-network ASC claims, United established mechanisms for

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1 systematically underpaying out-of-network ASC claims by consistently

2 undervaluing the UCR rate for such claims and then falsely representing to both the

3 ASCs and the members that the reimbursed amount represents the correct

4 reimbursement under the member's healthcare benefits plan. The Defendant Class

5 agreed, through their contracts with United, to use their flawed systems to

6 undervalue claims and thereby save each of the Defendants large sums of money in

7 the aggregate over thousands of claims.

8 135. **Continuing Unit.** The United Defendants' illegal predicate acts in this

9 case demonstrate that the Enterprise functioned as a continuing unit, and that these

10 acts were and are ongoing, and are not isolated. The members of the Defendant

11 Class continue to delegate responsibilities to United to interpret the plan documents,

12 to price and pay providers' claims, and to send false EOBs and letters to ASCs and

13 the members, and United continues to fraudulently assert that it has accurately and

14 appropriately priced the out-of-network ASC claims, continues to misinterpret the

15 terms of the health plans, continues to incorrectly price and pay the claims, and

16 continues to fraudulently represent that the members owe amounts to the ASCs

17 which are inappropriate under the terms of the health plans, but which amounts are

18 instead owed under the health plans.

19 136. The Enterprise provided each of the United Defendants with a system

20 or vehicle by which they could obtain flawed data and methodologies for

21 underpaying out-of-network ASC claims, use databases and fee schedules to

22 manipulate and reduce payments to ASCs for out-of-network services, and make

23 false representations to the ASCs concerning the reimbursement rates for the

24 services they provided. Ingenix benefited specifically by enhancing its ability to

25 earn licensing fees through its flawed reimbursement methodologies, and indirectly

26 through the underpayments and higher administrative fees of its parent,

27 UnitedHealth. UnitedHealth, United Healthcare and UHIC benefited specifically by

28 enhancing administrative fees they earned through contracts with employee benefit

Case 2:12-cv-03916-PSG-FFM Document 26-1 Filed 02/10/13 Page 41 of 76 Page ID
#:251
Case 2:08-cv-05457-PSG Document 65 Filed 08/07/09 Page 47 of 76

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

plans. UnitedHealth at all times benefited through the activities of its subsidiaries. The Representative ERISA Plan Defendants, as well as the other members of the Defendant Class, benefited specifically by reducing the amount of benefits payable from funds to the Plaintiff Class for out-of-network ASC services.

137.    Plaintiffs are informed and believe that defendant Ingenix has promoted its flawed systems for calculating non-contracted provider claims as a cost-saving mechanism. The Defendants all know that Medicare rates, in-network rates, and the Ingenix Database are not appropriate for using to determine UCR rates, but have nonetheless relied on this information and shared it with each other to improperly underprice claims. These actions were taken in furtherance of their efforts to avoid correctly paying according to the UCR rate, for the benefit of the Defendants and the Enterprise as a whole.

138.    **Persons.** The United Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted, participated in, operated, managed and/or controlled the affairs of the Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c). The United Defendants, and each of them, participated in the conduct of the Enterprise for the common purpose of shifting the costs of medical treatment from themselves and the Defendant Class to the plan members and providers. Each of the United Defendants performed an important function in the Enterprise's activities that went well beyond directing only their own affairs. The United Defendants developed and controlled the flawed Ingenix methodologies for underpricing out-of-network ASC claims, and promoted it to other members of the Enterprise. Plaintiffs are informed and believe that the Defendant Class expressly agreed with United for United to use the flawed Ingenix methodologies to underprice benefits on claims, concealed the use of these flawed methods for pricing claims from their plan members, and upheld underpayments by reliance on the flawed methodologies.

### Predicate Acts of Mail and Wire Fraud

139.   Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud).  18 U.S.C. § 1961(1)(B).  As set forth below, the United Defendants have and continue to engage in conduct violating each of these laws to effectuate their scheme to underpay nonparticipating ASCs.

140.   In addition, in order to make their scheme effective, each of the United Defendants sought to and did aid and abet each other in violating the above laws within the meaning of 18 U.S.C. § 2.  As a result, their conduct is indictable under 18 U.S.C. §§ 1341 and 1343 on this additional basis.

141.   For the purpose of executing and/or attempting to execute the above described fraudulent scheme to underpay the Plaintiff Class for services rendered to plan members, by means of false pretenses, representations or promises in connection with determining UCR, the United Defendants, in violation of 18 U.S.C. § 1341, placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carrier, and received matter and things from the Postal Service or commercial interstate carriers, including, but not limited to, EOBs, authorizations, correspondence, payments, reports, data, statements, and benefit plan materials.

142.   For the purpose of executing or attempting to execute the above described fraudulent scheme to underpay the Plaintiff Class for services rendered to plan members, by means of false pretenses, representations or promises in connection with determining UCR, the United Defendants, in violation of 18 U.S.C. § 1343, transmitted and received by interstate wire, including telephone and internet, matter and things which include, but are not limited to, EOBs, oral or electronic representations of out-of-network benefits, preauthorizations and other service approvals, correspondence, payment summaries, reports, data, statements, faxes, and benefit plan materials.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

Case 2:12-cv-08916-PSG-FFM Document 26-1 Filed 02/10/13 Page 42 of 76 Page ID
Case 2:08-cv-05457-PSG Document 65 Filed 08/07/10 Page 43 of 76 Page ID
#:253

143. The fraudulent matter and things communicated by the United Defendants, and each of them, via the Postal Service, commercial carrier, wire or other interstate electronic media include, but are not limited to:

a. United represented to the Plaintiff Class, during the verification of benefits process, that out-of-network benefits for ASC services under the health plans would be available at a UCR rate, but failed to disclose that United did not intend to price out-of-network ASC claims according to UCR.

b. United falsely represented to ASCs and to their patients in plan documents and marketing materials, including on United's website, that United prices the out-of-network ASC claims using an appropriate method for determining UCR, when in fact the methods used by United to price claims do not appropriately determine UCR.

c. United falsely represented on EOBs and other documents that it priced the out-of-network ASC claims by determining the UCR rate. For example, the EOBs typically stated that "The reasonable charge is based on **amounts charged** by other providers for similar services or supplies," or some similar language which in the industry context meant UCR reimbursement. Those representations were in fact false in that United did not determine reimbursement rates to out-of-network ASCs by comparing each ASC's charges with the charges of other ASCs for similar services or supplies. United has admitted that it simply calculated ASC rates based upon multiples of "highest in-network rates," Medicare reimbursement schedules or some other method that is inappropriate for determining UCR.

d. United falsely represented that it had priced the ASCs claims using the Ingenix Database. United has now admitted that those representations were in fact false in that the Ingenix Database was not used to price most ASC claims.

e. United falsely represented to ASCs and to their patients that the patients owed amounts to the ASCs – the difference between the ASC's charges and the amounts paid by Defendants – when in fact the patients did not owe such amounts to the ASCs. By improperly pricing the reimbursement rates to the out-of-network ASCs, United has illegally and improperly shifted the liability of paying the claims from

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

themselves to the members.

144. Other matter and things sent through or received from the Postal Service, commercial carrier or interstate wire transmission by United Defendants included information or communications in furtherance of or necessary to effectuate the scheme.

145. Each such use of the mails and each interstate wire communication in furtherance of the fraudulent scheme violated the federal mail fraud and federal wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.

146. The United Defendants' false statements, acts of concealment and failures to disclose were knowing and intentional, had the design and effect of preventing a meaningful evaluation and review of their grounds for benefit determinations, and were otherwise made for the purpose of deceiving ASCs and their patients as part of an ongoing scheme by the Enterprise to underpay out-of-network ASCs.

147. As fiduciaries and administrators of various health plans, the United Defendants occupied and continue to occupy a position of trust, by which they must accurately represent the terms and conditions of the plans, and to disclose all material facts concerning how plan benefits are priced and determined. Nonetheless, the United Defendants either knew or recklessly disregarded the fact that the false statements and omissions described above were material, and that the ASCs, as well as their patients, would and did detrimentally rely on such false statements and omissions when deciding to provide services, and during the claims adjudication and appeal process.

## Pattern of Racketeering Activity

148. The United Defendants have engaged in a "pattern of racketeering activity," as defined by 18 U.S.C. § 1961(5), by committing or aiding and abetting in the commission of at least two acts of racketeering activity, *i.e.*, indictable

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

violations of 18 U.S.C. §§ 664, 1341 and 1343, as described above, during the Class Period. In fact, each of the United Defendants has committed or aided and abetted in the commission of numerous acts of racketeering activity. Each act of racketeering activity was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results and impacted similar victims, including the Plaintiff Class.

149. The United Defendants, including Ingenix, engaged in a pattern of racketeering by, among other things, making repeated false statements to Plaintiffs and the Plaintiff Class, as well as the members, that the members had out-of-network benefits that would be priced based on the UCR rate, and that the claims were correctly processed using UCR data, when in fact the claims were incorrectly processed using highest in-network rates, Medicare schedules, the flawed data in the Ingenix Database, or some other flawed method that did not take into account the correct UCR criteria. On a number of occasions, Plaintiffs communicated directly with Ingenix by telephone, and were falsely told that Ingenix had reviewed the claim and correctly determined the reimbursement amount based on UCR, when in fact that had not occurred.

150. The multiple acts of racketeering activity which the United Defendants committed and/or conspired to commit, or aided and abetted in the commission of, were related to each other and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

151. The illegal predicate acts in this case satisfy both the "closed-ended continuity" or the "open-ended continuity" tests. *Allwaste, Inc. v. Hecht*, 65 F. 3d 1523, 1527 (9th Cir. 1995). The illegal predicate acts in this case satisfy the "closed-ended continuity" test because they span a "substantial period of time." Plaintiffs are informed and believe that United has improperly priced and paid out-of-network ASC claims thousands of times for many years. The illegal predicate

AMENDED CLASS ACTION COMPLAINT
Exh. D, Page 132

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

acts in this case satisfy the "open-ended continuity" test because United's "past conduct … by its nature projects into the future with a threat of repetition." *Allwaste, supra*, 65 F. 3d at 1528. The predicate acts specifically threaten repetition and have become a "regular way of doing business." *Allwaste, supra*, 65 F. 3d at 1528. In this case, the United Defendants' illegal actions are continuing even to this day, and will not cease unless enjoined by this Court. Indeed, it has become a "regular way of doing business" for United to systematically underprice and underpay out-of-network ASC claims, and then to (a) falsely misrepresent they are using appropriate UCR data to price the claims, including that they are using the Ingenix Database when in fact they are not, and (b) falsely represent their members' plan benefits and their members' financial responsibility for more than is provided under the terms of the patients' health benefits plan.

152.   There are too many examples of United Defendants' predicate acts to detail individually in this complaint without being cumulative. However, the following are illustrative examples of predicate acts committed by Defendants in furtherance of their fraudulent scheme:

a.   Patient 6 came to Downey for a laparoscopy, hysteroscopy, and other surgical procedures. On September 9, 2005, Downey called United to verify Patient 6's eligibility and benefits. Downey spoke with a representative named "Kim," who provided the verification that out-of-network benefits through the Cintas Plan would be paid at "60%" of UCR, and confirmed that there was no flat fee rate or allowed amount for the out-of-network outpatient surgery services. Thereafter, in reasonable reliance on this representation that Downey would be reimbursed at 60% of UCR, Downey provided its services to Patient 6. The total charges for Downey's services were $17,346.51. Yet, in the EOB that United sent to Downey on February 21, 2006, more than three months after Downey submitted the claim, United stated that the "Amount Allowed" was only $1,123.08, and paid only $193.85 – or approximately 1.1% of the total charges – for the services

provided to Patient 6. The EOB stated merely that the plan covers reasonable charges, which, according to the EOB, was based on "amounts charged by other providers for similar services or supplies," and that "payment of benefits has been made in accordance with the terms of the managed care system." Thus, United represented that the reimbursement was based on UCR, when in fact, according to United's statements in this litigation, the reimbursement was calculated using the "highest in-network rate" methodology. The claim was appealed, and on May 8, 2006, United responded in a letter stating that "reasonable and customary charge" had been determined using the Ingenix Database, and specifically misrepresented that the Ingenix Database "takes into account all pertinent factors," even though United knew that the Ingenix Database was flawed, was not designed to price claims, and did not take into account "all pertinent factors." Furthermore, to the extent that the Ingenix Database was not used to process the claim, but rather was processed using solely the "highest in-network rate" methodology, as claimed by United in this litigation, then the May 8, 2006 letter constituted a blatantly false and fraudulent statement on which Downey relied to its detriment.

      b.    Patient 7 came to Downey for an EGD and other procedures. On June 7, 2007, Downey called United to verify Patient 7's eligibility and benefits. Downey spoke with a representative named "Nathan," who provided the verification that out-of-network benefits through the Zale Plan would be paid at "60%" of UCR, and confirmed that there was no flat fee rate or allowed amount for the out-of-network outpatient surgery services. Thereafter, in reasonable reliance on this representation that Downey would be reimbursed at 60% of UCR, Downey provided its services to Patient 7. The total charges for Downey's services came to $12,752.00. Yet, in the EOB that United sent to Downey on July 31, 2007, United stated that the "Amount Allowed" was only $1,947.00, and paid only $568.20 – or approximately 4.4% of the total charges – for the services provided to Patient 7. The EOB stated merely that the plan covers reasonable charges, which, according to

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

the EOB, was based on "amounts charged by other providers for similar services or supplies," and that "payment of benefits has been made in accordance with the terms of the managed care system." Thus, United represented that the reimbursement was based on UCR, when in fact, according to United's statements in this litigation, the reimbursement was calculated using the "highest in-network rate" methodology. On November 16, 2007, in Downey's efforts to challenge the underpayment, a representative of United told Downey by telephone that Downey needed to speak with Ingenix regarding the status of the appeal. This demonstrates that Ingenix was not only being used to price the claim at the outset, but also to handle the "appeals." Downey's calls to Ingenix went unanswered, and none of the Defendants explained to Downey the true nature of Ingenix or its systems for determining the reimbursement amounts. United deprived Downey of the knowledge whereby it could reasonably challenge the flawed methodology that Ingenix used by which it failed to properly determine UCR. On November 27, 2007, Downey received a letter from United simply stating that the claim had been processed correctly and that "no further payment is due," without providing any substantive reasons as to why. The letter omitted any reference to Ingenix, even though the flawed Ingenix methodology for calculating out-of-network claims served as the improper basis for determining not to pay Downey at the correct UCR rates.

c. Patient 8 came to Downey for a umbilical hernia and hemorrholdectomy. On February 20, 2007, Downey called United to verify Patient 8's eligibility and benefits. Downey spoke with a representative named "Maria," who provided the verification that out-of-network benefits through the Allied Plan would be paid at "60%" of UCR, and confirmed that there was no flat fee rate or allowed amount for the out-of-network outpatient surgery services. Thereafter, in reasonable reliance on this representation that Downey would be reimbursed at 60% of UCR, Downey provided its services to Patient 8. The total charges for Downey's services were $15,520.95. Yet, in the EOB that United sent to Downey on May 22,

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2007, more than two months after Downey submitted the claim, United stated that the "Amount Allowed" was only $6,051.00, and paid only $3,399.60 – or approximately 21% of the total charges – for the services provided to Patient 8.  The EOB stated merely that the plan covers reasonable charges, which, according to the EOB, was based on "<u>amounts charged</u> by other providers for similar services or supplies," and that "payment of benefits has been made in accordance with the terms of the managed care system."  Thus, United represented that the reimbursement was based on UCR, when in fact, according to United's statements in this litigation, the reimbursement was calculated using the "highest in-network rate" methodology.  The claim was appealed.  In handling the appeal, United consulted Ingenix and its process.  On October 3, 2007, United responded in a letter stating that "<u>reasonable and customary charge" had been determined using the Ingenix Database</u>, and specifically misrepresented that the Ingenix Database "takes into account all pertinent factors," even though United knew that the Ingenix Database was flawed, was not designed to price claims, and did not take into account "all pertinent factors."  Furthermore, to the extent that the Ingenix Database was not used to price the claim, but rather was priced using solely the "highest in-network rate" methodology, as claimed by United in this litigation, then the October 3, 2007 letter constituted a blatantly false and fraudulent statement on which Downey relied to its detriment.

        d.      Patient 9 came to Downey for a colonoscopy with possible biopsy.  On May 12, 2009, Downey called United to verify Patient 9's eligibility and benefits.  Downey spoke with a representative named "Karen," who provided the verification that out-of-network benefits through the GE Plan would be paid at "80%" of UCR, and confirmed that there was no flat fee rate or allowed amount for the out-of-network outpatient surgery services.  Thereafter, in reasonable reliance on this representation that Downey would be reimbursed at 80% of UCR, Downey provided its services to Patient 9.  The total charges for Downey's services for the

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

1  pertinent date of service were $12,684.00. Yet, in the EOB that was sent jointly by

2  United and General Electric to Downey on July 14, 2009, nearly two months after

3  Downey submitted the claim, United and General Electric stated that the "Amount

4  Allowed" was only $2,043.00, and paid only $1,354.40 – or approximately 10% of

5  the total charges – for the services provided to Patient 9. The EOB stated merely

6  that the plan covers reasonable charges, which, according to the EOB, was based on

7  "amounts charged by other providers for similar services or supplies," and that

8  "payment of benefits has been made in accordance with the terms of the managed

9  care system." Thus, United and GE represented that the reimbursement was based

10 on UCR, when in fact, according to United's statements in this litigation, the

11 reimbursement was calculated using the "highest in-network rate" methodology.

12 When Downey called United to challenge its determination of the Allowable

13 Amount, Downey was told that the amount had been determined by Ingenix based

14 on UCR for similar facilities in the area, even though United and GE knew that the

15 appropriate UCR criteria was not used to reimburse the claim.

16      e.     Patient 10 came to Downey for an endoscopy procedure with

17 biopsy. In reasonable reliance on United's representation that the Parker Plan would

18 reimburse according to 60% of UCR, Downey provided its services to Patient 10 on

19 July 24, 2009. The total charges for the service were $13,405.45. When the claim

20 was underpaid at only $865.80, and the explanation in the EOB regarding the

21 method for pricing the claim stated that the plan covered "reasonable charges" based

22 on amounts charged by other providers for similar services or supplies," Downey

23 and the patient appealed. In handling the appeal, Plaintiffs are informed and believe

24 that United consulted Ingenix and its process. On July 20, 2009, United responded

25 in a letter stating that the plan covers "Reasonable and Customary (R&C) charges,"

26 and that United's process for determining R&C charges is based on the Ingenix

27 Database and the "pertinent factors" that it takes into account, as derived from a

28 database of provider-billed charges for professional healthcare services. United thus

specifically misrepresented that the Ingenix Database accurately determines UCR, even though United knew that the Ingenix Database was flawed, was not designed to price claims, and did not take into account all the pertinent UCR factors. Furthermore, to the extent that the Ingenix Database was not used to process the claim, but rather was processed using solely the "highest in-network rate" methodology, as claimed by United in this litigation, then the July 20, 2009 letter constituted a blatantly false and fraudulent statement on which Downey relied to its detriment.

f.    Patient A came to Tarzana for a circumcision procedure.  In reasonable reliance on United's representation that the AT&T Plan would reimburse according to 70% of "Eligible Expense," which given the industry context Tarzana was reasonably led to believe meant 70% of UCR, Tarzana provided its services to Patient A on August 12, 2008.  The total charges for Tarzana's services for the pertinent date of service were $16,000.00.  When the claim was underpaid at only $2,831.50, and the explanation in the EOB regarding the method for pricing the claim stated that the plan covered "reasonable charges" "based on amounts charged by other providers for similar services or supplies," Tarzana and the patient appealed.  In handling the appeal, Plaintiffs are informed and believe that United consulted Ingenix and its process.  On July 20, 2009, United responded in a letter stating that the plan pays "70 percent of Reasonable and Customary (R&C) charges for Covered Services" and that United's process for determining R&C charges is based on Ingenix, who "has developed database expertise using benchmarking-tools, including the actual and derived charge database produced called the Prevailing Healthcare Charges System (PHCS)."  The letter then went into great detail about how the Ingenix Database supposedly works.  United thus specifically misrepresented that the Ingenix Database accurately determines UCR, even though United knew that the Ingenix Database was flawed, was not designed to price claims, and did not take into account all the pertinent UCR factors.  Furthermore, to

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

the extent that the Ingenix Database was not used to process the claim, but rather was processed using solely the "highest in-network rate" methodology, as claimed by United in this litigation, then the July 20, 2009 letter constituted a blatantly false and fraudulent statement on which Tarzana relied to its detriment.

g.       Patient B came to Tarzana for an arthroscopy and shoulder surgery. In reasonable reliance on United's representation that the Best Buy Plan would reimburse according to "60% of UCR," Tarzana provided its services to Patient B on October 15, 2008. The total charges for Tarzana's services for the pertinent date of service were $32,352.00. When the claim was underpaid at only $9,336.00, and the explanation in the EOB regarding the method for pricing the claim stated that the plan covered "reasonable charges" "based on amounts charged by other providers for similar services or supplies," Tarzana and the patient appealed. In handling the appeal, Plaintiffs are informed and believe that United consulted Ingenix and its process. On August 10, 2009, United responded in a letter stating that the plan pays based on a determination of "reasonable and customary (R&C) charges," which had been determined using the Ingenix Database. United specifically misrepresented that the Ingenix Database "takes into account all pertinent factors," even though United knew that the Ingenix Database was flawed, was not designed to price claims, and did not take into account "all pertinent factors." Furthermore, to the extent that the Ingenix Database was not used to process the claim, but rather was processed using solely the "highest in-network rate" methodology, as claimed by United in this litigation, then the August 10, 2009 letter constituted a blatantly false and fraudulent statement on which Tarzana relied to its detriment.

h.       Patient C came to Tarzana for a hysterectomy. In reasonable reliance on United's representation that the J.C. Penney Plan reimbursed according to 60% of UCR, Tarzana provided its services to Patient C on April 8, 2009. The total charges for Tarzana's services for the pertinent date of service were

$23,709.00. When the claim was underpaid at only $2,831.40, Tarzana and the patient appealed. In handling the appeal, Plaintiffs are informed and believe that United consulted Ingenix and its process. On November 19, 2009, United responded in a letter stating that the plan pays based on a determination of "reasonable and customary (R&C) charges," which had been determined using the Ingenix Database. United specifically misrepresented that the Ingenix Database "takes into account all pertinent factors," even though United knew that the Ingenix Database was flawed, was not designed to price claims, and did not take into account "all pertinent factors." Furthermore, to the extent that the Ingenix Database was not used to process the claim, but rather was processed using solely the "highest in-network rate" methodology, as claimed by United in this litigation, then the August 10, 2009 letter constituted a blatantly false and fraudulent statement on which Tarzana relied to its detriment.

## **Injury**

153. Each of the Plaintiff Class members has been injured in its business and property as a proximate result of the United Defendants' violation of 18 U.S.C. § 1962(c), in that the Plaintiff Class members provided services to members as a result of the United Defendants' fraudulent statements about out-of-network benefits, and have been underpaid substantial sums for the services rendered to plan members in justifiable reliance on the fraudulent communications they received from the United Defendants concerning pricing and payment of out-of-network benefits.

154. By reason of this violation of 18 U.S.C. § 1962(c), the United Defendants are jointly and severally liable for three times the damages the Plaintiff Class members have sustained, plus costs in this suit, including reasonable attorneys' fees.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

## SECOND CLAIM FOR RELIEF

### Violations of 18 U.S.C. § 1962(d)
### (On Behalf Of Downey, Tarzana And The Plaintiff Class)
### (Against All Defendants And The Defendant Class)

155. The allegations of the prior paragraphs of the Amended Complaint are hereby repeated as if fully set forth herein.

156. During the Class Period, the United Defendants and Defendant Class members, including the Representative ERISA Plan Defendants, engaged in a conspiracy to which all of them agreed, and in which all of them participated, directly or indirectly, in the conduct of the affairs of the Enterprise. The object of the conspiracy was to underpay claims for services rendered by out-of-network ASCs, as described above. The commonalities between the fraudulent statements made to the Plaintiff Class, and the inappropriate methodologies used to underprice and underpay claims for services rendered to patients who are members of plans insured by United and/or who are beneficiaries of the Defendant Class' plans, establishes the existence of the conspiracy to violate 18 U.S.C. § 1962(c).

157. Each of the Defendants, including each member of the Defendant Class, agreed to the commission of a pattern of racketeering activity through the Enterprise as described above, and agreed to the operation and management of the Enterprise.

158. The United Defendants, and each of them, agreed that they would handle the administering of claims, and in the process make false representations through the interstate mail and wire channels concerning the manner in which out-of-network ASC claims are priced.

159. The Defendant Class members, including each of the Representative ERISA Plan Defendants, all of whom had fiduciary duties to ensure that claims are properly priced and paid, knew that United priced out-of-network ASC claims in a manner that did not conform with the ERISA plans and the Defendants'

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

representations concerning UCR. Plaintiffs are informed and believe that the Defendant Class members, including each of the Representative ERISA Plan Defendants, knew that United made the above-described false representations regarding the pricing of claims, agreed to make benefits payments and payment funding based on United's incorrect pricing, and also agreed to conceal the truth about United's pricing policies and methodologies to the extent that claims were appealed to the Defendant Class, or they were otherwise involved in the claims administration process.

160. Each of the Defendants was aware of the existence of the overall scheme and of the participation of others in it, and that the benefits of each were dependent on the success of the broader fraudulent venture to systematically underpay out-of-network ASCs by use of flawed data and methodologies that avoided properly paying based on UCR. In furtherance of this conspiracy, the United Defendants committed the predicate acts alleged above, and the Defendant Class agreed to United's predicate acts, and furthermore backed up United's fraudulent statements through their involvement in the claims process, and paid benefits in accordance with United's fraud.

161. Plaintiffs and the Class members have been injured in their business and property as a proximate result of this violation of 18 U.S.C. § 1962(d), in that they have incurred significant costs to provide services to the plan members and have underpaid substantial sums for the services rendered to plan members.

162. By reason of this violation of 18 U.S.C. § 1962(d), all of the Defendants are jointly and severally liable as co-conspirators for all of the damages sustained by Plaintiffs and the Class, trebled, plus costs in this suit, including reasonable attorneys' fees.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

## THIRD CLAIM FOR RELIEF

### Enforcement Under 29 U.S.C. § 1132(a)(1)(B)
### For Failure To Pay ERISA Plan Benefits
### (On Behalf Of Downey, Tarzana And The Plaintiff Class)
### (Against All Defendants And The Defendant Class)

163.   The allegations of the prior paragraphs of the Amended Complaint are hereby repeated as if fully set forth herein.

164.   This claim is alleged by Plaintiffs, for themselves and the Plaintiff Class, for relief in connection with claims for treatment rendered to patients covered by a health benefits plan governed by ERISA.   This is a claim to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B).   The Plaintiff Class members have standing to pursue these claims as assignees of their patient's benefits under the "ERISA plans."   As the assignees of benefits under the ERISA plans, the Plaintiff Class members became "beneficiaries" entitled to collect benefits under the terms of the ERISA plans, and were the "claimants" for purposes of the ERISA statute and regulations.

165.   ERISA authorizes actions under 29 U.S.C. § 1132(a)(1)(B) to be brought against the ERISA plans as entities and against the ERISA plans' administrators.   Plaintiffs are informed and believe that the Representative ERISA Plan Defendants identified as "ERISA plans" earlier in this Amended Complaint are all ERISA plans.   Therefore, these entities are proper defendants for this claim.

166.   Plaintiffs are informed and believe that the Representative ERISA Plan Defendants identified as "plan sponsors and/or plan administrators" earlier in this Amended Complaint are plan sponsors and/or designated plan administrators for the ERISA plans mentioned in the preceding paragraph.   Therefore, these entities are proper defendants for this claim.

167.   The members of the Defendant Class not specifically named herein also are ERISA plans and/or plan administrators, and therefore are proper defendants for

1076823.8

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

this claim.

168.   Plaintiffs are informed and believe that, with respect to certain ERISA plans at issue in this case, United HealthCare and/or UHIC insures it, sponsors it, funds it, serves as its designated plan administrator, and/or serves as the named plan administrator's "designee." Therefore, United HealthCare and UHIC are proper defendants for this claim.

169.   Plaintiffs are further informed and believe that, with respect to certain ERISA plans that are self-funded, but which do not specifically designate a plan administrator, each of the United Defendants plays a role in functioning as the *de facto* plan administrator. Therefore, each of the United Defendants is a proper defendant for this claim.

170.   Plaintiffs are further informed and believe that, with respect to those ERISA plans which designate one of the Representative ERISA Plan Defendants or members of the Defendant Class as the plan administrator, each of the United Defendants has functioned as a co-plan administrator. The United Defendants functioned and/or continue to function as plan administrators insofar as they have provided plan documents to participants, received benefit claims, evaluated and processed those claims, reviewed the terms of the plan, made initial benefit determinations, made and administered benefit payments, handled appeals of benefit determinations, and served as the primary point of contact for members and providers to communicate regarding benefits and benefit determinations.

171.   During the Class Period, the Plaintiff Class was entitled to reimbursement under the ERISA plans. The Defendants breached ERISA plan provisions for benefits by under pricing and underpaying the Plaintiff Class the out-of-network benefits covered under the ERISA plans. The Defendants' breaches included, among other things, interpreting and implementing the ERISA plan terms in a way that systematically was arbitrary and capricious, making material misrepresentations regarding the manner in which out-of-network benefits are

priced, making false representations that out-of-network ASC claims were paid based upon a comparison of each ASC's charges with amounts charged by other ASCs for similar services or supplies, using improper methodologies and systems to miscalculate UCR, and systematically reducing benefits paid to out-of-network ASCs for their services.

172.    Plaintiffs and the other members of the Plaintiff Class are deemed to have exhausted all administrative remedies available to them because Defendants failed to establish and follow reasonable claims procedures as required by ERISA. The Defendants have routinely failed to process claims submitted by the Plaintiff Class in a manner consistent or substantially in compliance with ERISA regulations. 29 C.F.R. § 2560.503-1.  Among other things, the Defendants:

- failed to notify the Plaintiff Class members of benefit determinations and review determinations within the required amount of time after receipt of the claim or appeal;

- failed to provide the specific reason or reasons for their benefit determinations or review determinations, including information concerning the flawed Ingenix methods used for pricing out-of-network ASC claims;

- failed to make reference to the specific plan provisions on which their benefit determinations or review determinations were based;

- made materially false and misleading statements concerning their methods for determining the allowable amount, and refused to disclose the true internal rules, guidelines, protocols and criteria that were relied upon in making the benefit and review determinations;

- failed to provide the Plaintiff Class members with a sufficient description of the plan's review procedures;

- denied the Plaintiff Class members the right to appeal benefit determinations;

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

- failed to provide review of appeals that did not afford deference to the initial benefit determination, and which was conducted by an appropriate named fiduciary of the plan who is independent of the person who made the initial benefit determination;

- employed policies designed to unduly hamper the appeal of claims submitted by the Plaintiff Class members, including through their systematic reliance on inappropriate data;

- denied the efforts of the Plaintiff Class members the right to become sufficiently acquainted with the terms of the ERISA plan, as well as the Defendants' true methods of determining UCR, thereby rendering the administrative appeal a futile and meaningless endeavor.

173. The following examples illustrate how Downey's claims are deemed exhausted:

a. Downey submitted the claim for Patient 6 to United on or about November 1, 2005, and submitted medical records in support of the claim no later than November 22, 2005. By December 22, 2005, Downey had not received any benefit determination on the claim, and therefore contacted United to inquire on the status. Downey was told by United on December 22, 2005, and again on December 28, 2005, that medical records had been received and were being reviewed by Ingenix. However, by mid-January 2006 Downey still had not received a benefit determination on the claim, and had not received any request from United for additional information to process the claim. When Downey contacted United on or about January 18, 2006, United told Downey that medical records were not on file and had to be resubmitted, notwithstanding United's earlier representation that Ingenix was reviewing the medical records. Finally, on February 21, 2006, nearly four months after Downey submitted the claim, Downey received an EOB from United, in which the "Amount Allowed" was stated as $1,123.08, with a payment of $193.85 – or approximately 1.1% of the billed charges on the claim. The EOB

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1    stated merely that the plan covers reasonable charges, which, according to the EOB,

2    was based on "amounts charged by other providers for similar services or supplies,"

3    and that "payment of benefits has been made in accordance with the terms of the

4    managed care system."  There was no reference to any specific plan provision.  Nor

5    did the EOB provide any notice of appeal rights or appeal procedures, even though

6    United had accepted the claim from Downey, had made payment directly to

7    Downey, and thereby acknowledged Downey's status as the claimant.  Downey was

8    able to learn the address for submitting appeals to United, and on March 29, 2006,

9    caused an appeal to be submitted to United stating that the allowed amount was

10   inconsistent with representations by United that the plan would cover 60% of UCR.

11   On May 8, 2006, United responded in a letter to Patient 6 that the claim supposedly

12   was paid correctly.  The letter expressly stated that "reasonable and customary

13   charge" had been determined using the Ingenix Database, and specifically

14   misrepresented that the Ingenix Database "takes into account all pertinent factors,"

15   even though United knew that the Ingenix Database was not used to price the claim

16   and that none of the pertinent UCR factors were taken into account.  United now

17   admits for the first time in this litigation that the appeal letter was false, and that the

18   claim was actually priced using the "highest in-network rate" methodology.  Neither

19   the EOB nor the appeal denial letter disclosed the use of such methodology; to the

20   contrary, they both made materially false statements that the claim had been priced

21   by correctly determining the UCR rate.  Thus, further appeal of this claim would

22   have been pointless and futile because Downey was not provided with the true basis

23   for the review determinations, and therefore had no way of knowing what to appeal.

24   Moreover, Plaintiffs are informed and believe that Ingenix, who handled the initial

25   benefit determination, either conducted or was consulted in the appeal review.

26   Plaintiffs are informed and believe that Ingenix would have conducted or have been

27   consulted in any further appeal, thus rendering the appeal process unfairly

28   deferential to the initial benefit determination.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

b.      In the EOB that United Healthcare sent to Downey on July 31, 2007, for Patient 7, United stated that the "Amount Allowed" was only $1,947.00, and paid only $568.20 – or approximately 4.4% of the total charges – for the services provided to Patient 7.  The EOB stated merely that the plan covers reasonable charges, which, according to the EOB, was based on "amounts charged by other providers for similar services or supplies," and that "payment of benefits has been made in accordance with the terms of the managed care system."  On November 16, 2007, in Downey's efforts to challenge the underpayment, a representative of United told Downey by telephone that Downey needed to speak with Ingenix regarding the status of the appeal.  This demonstrates that Ingenix was not only being used to price the claim at the outset, but also to handle the "appeals."  Downey's calls to Ingenix went unanswered, and none of the Defendants explained to Downey the true nature of Ingenix or its process for pricing the claim.  United and Ingenix deprived Downey of the knowledge whereby it could reasonably challenge the flawed methodology that Ingenix used for determining UCR.  On November 27, 2007, Downey received a letter from United simply stating that the claim had been processed correctly and that "no further payment is due," without providing any substantive reasons as to why.

c.      Plaintiffs are informed and believe that Patient 11 is a member of the Cingular Plan.  Patient 11 came to Downey for hysteroscopy and other procedures.  On March 30, 2007, Downey called United to verify Patient 11's eligibility and benefits.  Downey spoke with a representative named "Scarlett," who provided the verification that out-of-network benefits would be paid at "80%" of UCR, and confirmed that there was no flat fee rate or allowed amount for the out-of-network outpatient surgery services.  Thereafter, in reasonable reliance on this representation that Downey would be reimbursed at 80% of UCR, Downey provided its services to Patient 10.  The total charges for Downey's services came to $16,560.19.  Downey submitted the claim to United on or about April 15, 2007.  On

Case 2:12-cv-08916-PSG-FFM Document 26-1 Filed 02/10/17 Page 62 of 76 Page ID
#:272
Case 2:09-cv-05457-PSG Document 65 Filed 08/07/10 Page 62 of 76

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

1  May 8, 2007, United sent Downey an EOB that did not contain a benefit

2  determination, but rather said: "The medical documentation that was submitted with

3  this claim has been forwarded for review. We will process this claim when the

4  review has been completed." By June 22, 2007, Downey still had not received a

5  benefit determination on the claim. When Downey called United to inquire about

6  the status, Downey was told that it needed to submit medical documentation, even

7  though United had never made a written request for additional medical

8  documentation, and had in fact already notified Downey in writing that United had

9  received medical documentation for review. Downey nonetheless resubmitted

10 medical documentation. Finally, on August 21, 2007, more than four months after

11 submitting the claim, Downey received an EOB from United with an allowed

12 amount of only $4,545.00, and a payment of only $3,636.00 – or 21% of billed

13 charges. The EOB stated merely that the plan covers reasonable charges, which,

14 according to the EOB, was based on "amounts charged by other providers for

15 similar services or supplies," and that "payment of benefits has been made in

16 accordance with the terms of the managed care system." There was no reference to

17 any specific plan provision. Nor did the EOB provide any notice of appeal rights or

18 appeal procedures, even though United had accepted the claim from Downey, had

19 made payment directly to Downey, and thereby acknowledged Downey's status as

20 the claimant. Downey was able to learn the address for submitting appeals to

21 United, and on September 19, 2007, caused an appeal to be submitted to United

22 challenging the purported UCR determination. On October 25, 2007, United

23 responded in a letter to Patient 10 that the claim supposedly was paid correctly. The

24 letter expressly stated that "reasonable and customary charge" had been determined

25 using the Ingenix Database, and specifically misrepresented that the Ingenix

26 Database "takes into account all pertinent factors," even though United knew that

27 the Ingenix Database was not used to price the claim. United now admits that the

28 appeal denial letter was false, and that the claim was actually priced using the

1076823.8

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

"highest in-network rate" methodology. Neither the EOB nor the appeal denial letter disclosed the use of such methodology; to the contrary, they both made materially false statements that the claim had been priced by correctly determining the UCR rate. Thus, further appeal of this claim would have been pointless and futile because Downey was not provided with the reasons or basis for the review determinations, and therefore had no way of knowing what to appeal. Moreover, Plaintiffs are informed and believe that Ingenix, who handled the initial benefit determination, also conducted or was consulted in the appeal review. Plaintiffs are informed and believe that Ingenix would have conducted or have been consulted in any further appeal, thus rendering the appeal process unfairly deferential to the initial benefit determination.

174. The following examples illustrate how Tarzana's claims are exhausted:

a. Patient A came to Tarzana for a circumcision procedure. In reasonable reliance on United's representation that the AT&T Plan would reimbursed according to 70% of "Eligible Expense," which Tarzana was led to believe meant 70% of UCR, Tarzana provided its services to Patient A on August 12, 2008. The total charges for Tarzana's services for Patient A were $16,000.00. When the claim was underpaid at only $2,831.50, and the explanation in the EOB regarding the method for pricing the claim stated that the plan covered "reasonable charges" "based on amounts charged by other providers for similar services or supplies," Tarzana and the patient appealed. In handling the appeal, Plaintiffs are informed and believe that United Healthcare consulted Ingenix and its process. On July 20, 2009, United Healthcare responded in a letter stating that the plan pays "70 percent of Reasonable and Customary (R&C) charges for Covered Services" and that United's process for determining R&C charges is based on Ingenix, who "has developed database expertise using benchmarking-tools, including the actual and derived charge database produced called the Prevailing Healthcare Charges System (PHCS)." The letter then went into great detail about how the Ingenix Database

AMENDED CLASS ACTION COMPLAINT
Exh. D, Page 150

Case 2:12-cv-03916-PSG-FFM Document 26-1 Filed 02/10/13 Page 64 of 76 Page ID
#:274
Case 2:09-cv-05457-PSG-FFM Document 65 Filed 08/07/09 Page 64 of 76

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

1  supposedly works.  United thus specifically misrepresented that the Ingenix

2  Database accurately determines UCR, even though United Healthcare knew that the

3  Ingenix Database was flawed, was not designed to price claims, and did not take

4  into account all the pertinent UCR factors.  Furthermore, to the extent that the

5  Ingenix Database was not used to process the claim, but rather was processed using

6  solely the "highest in-network rate" methodology, as claimed by United in this

7  litigation, then the July 20, 2009 letter constituted a blatantly false and fraudulent

8  statement on which Tarzana relied to its detriment.  Moreover, the letter stated all

9  levels of appeal had been exhausted.

10           b.     Patient B came to Tarzana for an arthroscopy and shoulder

11  surgery.  In reasonable reliance on United's representation that the Best Buy Plan

12  would reimburse according to 60% of UCR, Tarzana provided its services to Patient

13  B on October 15, 2008.  The total charges for Tarzana's services for the pertinent

14  date of service were $32,352.00.  When the claim was underpaid at only $9,336.00,

15  and the explanation in the EOB regarding the method for pricing the claim stated

16  that the plan covered "reasonable charges" "based on amounts charged by other

17  providers for similar services or supplies," Tarzana and the patient appealed.  United

18  gave Tarzana a run-around in accepting the appeal submission, and needlessly

19  required Tarzana to submit the same information multiple times before United

20  would process the appeal.  In handling the appeal, Plaintiffs are informed and

21  believe that United Healthcare consulted Ingenix and its process.  On August 10,

22  2009, United Healthcare responded in a letter stating that the plan pays based on a

23  determination of "reasonable and customary (R&C) charges," which had been

24  determined using the Ingenix Database.  United specifically misrepresented that the

25  Ingenix Database "takes into account all pertinent factors," even though United

26  knew that the Ingenix Database was flawed, was not designed to price claims, and

27  did not take into account "all pertinent factors."  Furthermore, to the extent that the

28  Ingenix Database was not used to process the claim, but rather was processed using

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

solely the "highest in-network rate" methodology, as claimed by United in this litigation, then the August 10, 2009 letter constituted a blatantly false and fraudulent statement on which Tarzana relied to its detriment. Thus, further appeal of this claim would have been pointless and futile because Tarzana was not provided with the reasons or basis for the review determinations, and therefore had no way of knowing what to appeal. Moreover, Plaintiffs are informed and believe that Ingenix handled the initial benefit determination, and would have conducted or have been consulted in any further appeal, thus rendering the appeal process unfairly deferential to the initial benefit determination.

c.     Patient C came to Tarzana for a hysterectomy. In reasonable reliance on United's representation that the J.C. Penney Plan reimbursed according to 60% of UCR, Tarzana provided its services to Patient C on April 8, 2009. The total charges for Tarzana's services for the pertinent date of service were $23,709.00. When the claim was underpaid at only $2,831.40, Tarzana and the patient appealed. In handling the appeal, Plaintiffs are informed and believe that United consulted Ingenix and its process. On November 19, 2009, United responded in a letter stating that the plan pays based on a determination of "reasonable and customary (R&C) charges," which had been determined using the Ingenix Database. United specifically misrepresented that the Ingenix Database "takes into account all pertinent factors," even though United knew that the Ingenix Database was flawed, was not designed to price claims, and did not take into account "all pertinent factors." Furthermore, to the extent that the Ingenix Database was not used to process the claim, but rather was processed using solely the "highest in-network rate" methodology, as claimed by United in this litigation, then the August 10, 2009 letter constituted a blatantly false and fraudulent statement on which Tarzana relied to its detriment.

175.   The examples in the preceding paragraphs are typical of Plaintiffs' claims, and Plaintiffs are informed and believe that they also are typical of claims

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

1    submitted by the other Plaintiff Class members.

2    176.  Plaintiffs also typically exhausted administrative remedies available to

3 them by extensively pursuing administrative relief before filing suit.  Plaintiffs'

4 employees repeatedly sent appeal letters to United challenging the "allowable

5 amount" determination, and made numerous phone calls to United with respect to

6 each of its claims.  Because Plaintiffs' direct appeals often went without a response

7 from United or the ERISA Plans, Plaintiffs frequently enlisted the assistance of the

8 members to submit written appeals.  Plaintiffs are informed and believe that their

9 administrative appeal efforts are typical of those of the other Plaintiff Class

10 members.

11    177.  Exhaustion also would have been futile.  In light of the Defendants'

12 long-standing refusal to provide anything more than a cursory and false explanation

13 concerning Defendants' true methods for calculating UCR, and given their ongoing

14 and continued use of improper methodologies to underpay claims in a manner that

15 fails to comply with the ERISA plans, further exhaustion of Defendants' inadequate

16 administrative remedies also would have been futile and meaningless.

17    178.  By reason of the foregoing, Plaintiffs and the Plaintiff Class are entitled

18 to past due benefits, future benefits, declaratory relief, prejudgment interest, and

19 attorneys' fees.  The Court should specifically order the Defendants:

20
21      1)  for each member of the Plaintiff Class, for each relevant time period, to compile a valid database of charges by the particular Plaintiff Class member and other ASCs in the same geographic area (the distance that
22      could reasonably be considered appropriate for a patient to travel in the same area);
23

24      2)  to calculate past and future benefits pursuant to a valid database that takes into account valid data and the UCR factors of the rates charged by
25      the provider and other ASCs in the same geographic area at the time;
26

27      3)  to determine the UCR rate for out-of-network ASCs without reference to contracted rates for in-network providers;

28

AMENDED CLASS ACTION COMPLAINT

Case 2:12-cv-08916-PSG-FFM   Document 26-1   Filed 02/10/13   Page 67 of 76   Page ID
#:277
Case 2:08-cv-05467-PSG   Document 65   Filed 08/07/10   Page 67 of 76

4)  to consider the UCR rate without reference to Medicare rates or
schedules; and

5)  to establish a fund to pay the correct UCR amounts to the Plaintiff
Class members for past services that were underpaid;

6)  to pay future claims at the correct UCR rates; and

7)  issue new EOBs for past claims, and correct EOBs for future claims,
that are in compliance with applicable regulatory notice standards.

### FOURTH CLAIM FOR RELIEF

**Enforcement Under 29 U.S.C. § 1132(a)(3)
For Full and Fair Review Of Claims
(On Behalf Of Downey, Tarzana And The Plaintiff Class)
(Against All Defendants And The Defendant Class)**

179.   The allegations of the prior paragraphs of the Amended Complaint are
hereby repeated as if fully set forth herein.

180.   This claim is alleged by Plaintiffs, for themselves and the Plaintiff
Class, for relief in connection with claims for treatment rendered to patients covered
by a health benefits plan governed by ERISA.  This is a claim pursuant to 29 U.S.C.
§ 1132(a)(3), to redress the Defendants' failures to comply with 29 U.S.C. § 1133,
the implementing regulations set forth at 29 C.F.R. § 2560.503-1, and federal
common law.  The Plaintiff Class members have standing to pursue these claims as
assignees of their patient's benefits under the "ERISA plans."  As the assignees of
benefits under the ERISA plans, the Plaintiff Class members became "beneficiaries"
entitled to collect benefits under the terms of the ERISA plans, and were the
"claimants" for purposes of the ERISA statute and regulations.

181.   The Plaintiff Class is entitled to certain procedural protections
concerning the manner in which their claims are handled by ERISA fiduciaries,
including the specific reasons for the denial or partial denial of claims, and a "full
and fair review" of all denied or partially-denied claims.  *See* 29 U.S.C. § 1133; 29

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

C.F.R. § 2560.503-1. Plaintiffs are informed and believe that the Defendant Class delegated certain fiduciary claims handling responsibilities to United, including but not limited to, the duty to accurately represent and disclose information concerning pricing and reimbursement methods for out-of-network benefits. Plaintiffs are informed and believe that the Defendant Class members retained certain fiduciary claims handling responsibilities in their capacity as plan administrators, including but not limited to involvement in appeals.

182. The Defendants failed to comply with their fiduciary obligations to provide a "full and fair review" of denied or partially-denied claims pursuant to 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1. Among other things, the Defendants made representations to the Plaintiff Class members concerning benefits that were inconsistent with, or unauthorized by, the terms of the ERISA plans, and they failed to disclose their methodology and other critical information relating to benefit determinations for claims submitted by the Plaintiff Class.

183. When Plaintiff Class members contacted United to verify out-of-network benefits for plan members, United failed to truthfully disclose that the pricing of out-of-network benefits would be subject to the inappropriate methodologies developed and used by Ingenix. Instead, United misrepresented to the Plaintiff Class members that the plan would price benefits in accordance with UCR.

184. When the Plaintiff Class members received EOBs from United and/or members of the Defendant Class, these notices failed to disclose the reasons for the benefits determination with sufficient specificity. Rather, they falsely stated that the benefits had been calculated based on a correct calculation of the UCR rate, when in fact benefits had been priced pursuant to inappropriate methodologies, such as the "highest in-network rate" method. The EOBs also provided that benefits had been determined in accordance with the member's plan, but without any written explanation concerning the terms of the benefit plan or the methodology used to

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

determine the amount of benefits.  Furthermore, the EOBs sent to the Plaintiff Class members typically failed to advise of any appeal rights.

185.   When Plaintiff Class members attempted to appeal underpaid claims, United often refused to accept the appeal, and incorrectly claimed that providers lacked direct appeal rights.  When United did accept appeals, it nonetheless still failed to disclose the reasons for the benefits determination with sufficient specificity.  In many instances, United, pursuant to authorization given it by the Defendant Class members, intentionally made false statements in letters responding to appeals concerning the manner in which benefits had been determined.  For example, rather than disclose that it calculated benefits based on Medicare rates, United falsely represented that it used the Ingenix Database to determine the UCR rate.  The Defendants' systematic false statements made it impossible for the Plaintiff Class members to obtain full and fair review of their claims.

186.   In sum, the Defendants denied the Plaintiff Class members the opportunity to a "full and fair review" of the underpaid claims, *inter alia*, by:

- failing to disclose the use of its true methodologies and resources used to determine the benefit payments;

- misrepresenting the manner in which claims were priced;

- misrepresenting that the claims were reimbursed by comparing an ASC charges with other ASCs' charges for similar services, in accordance with UCR, when in fact reimbursements for the claims were not based upon such comparisons;

- failing to disclose with specificity the reasons for the adverse determinations with respect to appeal requests, and failing to cite specific provisions of the plans that supported the determinations;

- failing to promptly and timely provide Explanation of Benefits and responses to appeals;

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX (310) 551-8181

- failing to provide a review that did not defer to the initial adverse benefit determination, which was based on improper methods for underpricing UCR reimbursement;

- refusing to acknowledge the claimant status of out-of-network ASCs as assignees of the plan members, and denying them the right to appeal claims through the plans' administrative procedures.

187. The Defendants' failure to comply with the procedural requirements of ERISA, the Secretary of Labor's implementing regulations, the terms of ERISA plans, and/or the federal common law results in the administrative remedies of the Plaintiff Class members being deemed exhausted. *See* 29 C.F.R. § 2560.503-1(l). Moreover, a claim under ERISA Section 502(a)(3) to enforce the review requirements of ERISA Section 503 and the claims procedures regulations does not require the exhaustion of administrative remedies. *See Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1035 (9th Cir. 2005).

188. By reasons of the foregoing, Plaintiffs and the Plaintiff Class are entitled to (1) a declaration by this Court that the Defendants' actions as alleged herein are in violation of their fiduciary duties and obligations under ERISA, (2) an injunction requiring the Defendants to comply with their fiduciary duties and obligations under ERISA, and (3) an order requiring that the Defendants provide the Plaintiff Class members the full and fair review of claims to which they are entitled for both past and future claims. Specifically, the Court should order the Defendants, and each of them, to:

1) disclose the true methodologies used to determine out-of-network benefit payments for ASCs;

2) desist from misrepresenting the manner in which claims are priced;

3) disclose with specificity the reasons for the adverse determinations with respect to appeal requests, and cite the specific provisions of the plans that support the determinations;

1076823.8

4) promptly and timely provide Explanation of Benefits and responses to appeals;

5) provide a review that does not defer to the initial adverse benefit determination;

6) acknowledge the claimant status of out-of-network ASCs as assignees of the plan members, and afford them the right to appeal claims through the plans' administrative procedures.

## FIFTH CLAIM FOR RELIEF
### Violation of California Business & Professions Code §§ 17200 *et seq.*
### (On Behalf Of Downey, Tarzana And The California Subclass)
### (Against The United Defendants)

189. The allegations of the prior paragraphs of the Amended Complaint are hereby repeated as if fully set forth herein.

190. The United Defendants have engaged in unfair, unlawful and/or fraudulent business acts and practices by, *inter alia*:

a. committing violations of RICO, as alleged above;

b. using arbitrary, capricious and improper methods to improperly underprice out-of-network ASC claims;

c. submitting, accepting and using incomplete and scrubbed data to the Ingenix Database such that it could not accurately determine UCR for ASC claims;

d. making false and misleading statements in EOBs, RAs, and other correspondence concerning the manner in which United priced the reimbursement amount for out-of-network ASC claims;

e. concealing and/or omitting material information in EOBs, RAs, and other correspondence concerning the manner in which United determines the reimbursement amount for out-of-network ASC claims;

f. inducing the California Subclass members to provide services to plan

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

members on the basis of representations that the Defendants would pay for the services at a particular percentage of UCR, when in fact the Defendants routinely and systematically underpaid for the services without regard to a proper determination of UCR;

g.  routinely misrepresenting the reasonable and customary rates of out-of-network ASC services to the members of the Defendant Class and other payors;

h.  for those health plans that are governed by the California Department of Managed Health Care – failing to correctly and accurately apply the criteria used to calculate UCR rates as set forth in Title 28 of the California Code of Regulations, section 1300.71(a)(3)(B), and by failing to comply with California Health and Safety Code § 1371 and 28 C.C.R. § 1300.71 by knowingly, among other things, engaging in an "unfair payment pattern," including, but not limited to, delaying payment of claims, reducing the amount of payment and/or denying payment of claims, failing on a repeated basis to pay uncontested portions of claims within the time period specified in Health and Safety Code §§ 1371 *et seq*., and not paying reasonable and customary rates.

191.  This conduct by the United Defendants constitutes illegal and unfair business practices under California Business and Professions Code § 17200, *et seq*. As a result of their acts of unfair competition, the United Defendants have and continue to receive and retain monies that rightfully belong to the California Subclass members as compensation for rendering covered, medically necessary services to the plan members.

192.  In addition, the United Defendants' unfair competition is likely to continue absent judicial intervention.  This conduct threatens not only the economic well being and future viability of the California Subclass, but the health of the public.

193.  California Business and Professions Code § 17203 provides that any court of competent jurisdiction may enjoin any person from engaging in unfair competition and restore to any person who is a victim of that unfair competition any

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

money acquired thereby. Plaintiffs seek, on behalf of themselves and the California Subclass, restitution of an amount to be proved at trial, plus applicable statutory interest, which is the amount that the United Defendants are obligated to pay the California Subclass members for the services they provided to plan members. The United Defendants should be specifically ordered to disgorge amounts which represent the difference between what the Defendants paid the California Subclass using the inappropriate methodologies for determining UCR, and the California Subclass's total billed charges on past claims, which appropriately represents UCR. Plaintiffs further seek, on behalf of themselves and the California Subclass, an injunction prohibiting the United Defendants' ongoing conduct in using the inappropriate methodologies to underprice out-of-network ASC claims, reduce payment, deny payment and/or delay payment to the California Subclass for medical treatment provided to plan members. Furthermore, the injunction should force the United Defendants to correctly price past and future out-of-network ASC claims by determining UCR based on appropriate UCR data.

194. The legal remedies of the California Subclass are inadequate in that the United Defendants' unfair, unlawful and fraudulent conduct is ongoing and repeated litigation to correct its ongoing actions is inefficient for the parties and the Court.

**WHEREFORE**, Downey, Tarzana and the Plaintiff Class pray for and demand judgment against the Defendants as set forth above and as follows:

1. On the First and Second Claims for Relief under RICO, three times the damages sustained by Plaintiffs and the Plaintiff Class as a result of the fraudulent and unlawful conduct complained of, such amount to be determined at trial, plus costs and attorneys' fees;

2. On the Third Claim for Relief under ERISA, the Court should specifically order the Defendants:

   1) for each member of the Plaintiff Class, for each relevant time period, to

Case 2:12-cv-08916-PSG-FFM   Document 26-1   Filed 02/10/13   Page 74 of 76   Page ID
#:284
Case 2:03-cv-05457-PSG   Document 65   Filed 08/07/   Page 74 of 76

compile a valid database of charges by the particular Plaintiff Class member and other ASCs in the same geographic area (the distance that could reasonably be considered appropriate for a patient to travel in the same area);

2) to calculate past and future benefits pursuant to a valid database that takes into account valid data and the UCR factors of the rates charged by the provider and other ASCs in the same geographic area at the time;

3) to determine the UCR rate for out-of-network ASCs without reference to contracted rates for in-network providers;

4) to consider the UCR rate without reference to Medicare rates or schedules; and

5) to establish a fund to pay the correct UCR amounts to the Plaintiff Class members for past services that were underpaid;

6) to pay future claims at the correct UCR rates; and

7) issue new EOBs for past claims, and correct EOBs for future claims, that are in compliance with applicable regulatory notice standards.

3.   On the Fourth Claim for Relief under ERISA, a judicial declaration that the Defendants' actions as alleged herein are in violation of their fiduciary duties and obligations under ERISA, and an injunction requiring them to comply with such duties and obligations, including providing full and fair review of past and future claims without resort to the unlawful procedures described herein;

4.   On the Fifth Claim for Relief under California Business & Professions Code § 17200, permanently enjoining Defendants from engaging in the unfair business practices complained of, and requiring Defendants to restore to Plaintiffs and the California Subclass, and otherwise to disgorge, any money that has been acquired from Plaintiffs and the California Subclass, by means of Defendants' determination of UCR by use of improper methodologies, as well as any other unfair business practices;

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

5.    Awarding prejudgment interest and costs, including attorneys' fees; and

6.    Awarding such other relief as the Court deems just and proper.

DATED: May 7, 2010               Respectfully submitted,

                                 HOOPER, LUNDY & BOOKMAN, INC.

                                 By:_____
                                           DARON L. TOOCH
                                 Attorneys for Plaintiffs

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

## DEMAND FOR JURY TRIAL

Plaintiffs Downey Surgical Clinic, Inc. and Tarzana Surgery Center, Inc., for themselves and the Class they represent, demand a jury trial for all claims so triable.

DATED: May _7_, 2010                    HOOPER, LUNDY & BOOKMAN, INC.


By: _____
               DARON L. TOOCH
Attorneys for Plaintiffs

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1076823.8