IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FOREST AMBULATORY SURGICAL ASSOCIATES, L.P., <br><br>  Plaintiff, <br> v. <br><br> UNITED HEALTHCARE INSURANCE COMPANY, <br><br>  Defendant. | NO. 10-CV-04911-EJD <br><br> **ORDER DENYING UNITED'S MOTION TO TRANSFER VENUE AND GRANTING UNITED'S MOTION TO DISMISS WITH LEAVE TO AMEND** |

Presently before the Court are United HealthCare's Motions to Transfer Venue and to Dismiss filed February 10, 2011. For the reasons set forth below, the motion to transfer will be denied, the motion to dismiss will be granted, and the Plaintiff will be given leave to amend its complaint.

**I. BACKGROUND**

Forest Ambulatory Surgical Associates ("Forest") is a healthcare services provider that owns a surgery center in San Jose. Over an eighteen-month period in 2009 and 2010, it provided services to 139 patients insured by United HealthCare ("United") in exchange for the patients' assignment of benefits under certain benefit plans. The assignments allow Forest, which is not in the network of providers with which United has contracts, to bill United directly for the claims. According to Forest, each of these claims was underpaid or unpaid.

Forest filed suit to recover these benefits on September 29, 2010 in state court. Since some of

the plans are allegedly covered by the Employee Retirement Income Security Act ("ERISA"), United removed the case to federal court. Forest then amended its complaint to explicitly plead a cause of action for recovery of benefits under ERISA. United moves to dismiss each of the claims in Forest's First Amended Complaint for failure to state a claim.

Forest's counsel has a class action (the "Downey Action") pending in the Central District of California against United and other codefendants.[1] The class action pleads two counts of racketeering in addition to recovery of benefits under ERISA. The putative class in the Downey Action would include Forest, although Forest might exercise its right to opt out if the class were certified. The case has been stayed for the past nine months pending resolution of an issue in a multidistrict litigation that also concerns the rates paid by insurance carriers to out-of-network healthcare providers.[2] The Downey Action and several cases involved in the multidistrict litigation are all before Judge Gutierrez in the Central District. United moves to transfer this case to the Central District of California in order to coordinate the related cases, to avoid duplicative litigation, and to avoid the possibility of inconsistent rulings.

**II. MOTION TO TRANSFER VENUE**

**A. Standards**

Pursuant to 28 U.S.C. § 1404(a), a change of venue is proper if the court determines that the action "might have been brought" in the transferee court, and the convenience of the parties and witnesses in the interests of justice favor transfer. Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985). If the court finds that the first prong of the § 1404(a) analysis is satisfied, it has discretion to engage in an "individualized, case-by-case consideration of convenience and fairness." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (quoting Stewart Org. v. Ricoh

---

[1] Case no. 2:09-CV-05457-PSG-CT in the Central District of California. The codefendants are other United companies as well as various other corporations and their employee benefit plans.

[2] The multidistrict litigation is *In Re Wellpoint, Inc., Out-of-Network "UCR" Rates Litigation*, case no. 2:09-ML-02074-PSG-FFM.

2

Corp., 487 U.S. 22, 29 (1988)).[3] The moving party bears the burden of showing that the convenience of the parties and witnesses and the interests of justice favor transfer. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979). A change of venue may be denied where transfer would lead to delay. Pratt v. Rowland, 769 F. Supp. 1128, 1133 (N.D. Cal. June 28, 1991) (citing Allen v. Scribner, 812 F.2d 426, 436 (9th Cir. 1987)).

**B. Analysis**

There is no question that the action could have been brought in the Central District of California; rather, the parties contest whether transferring the case there serves the interests of justice, fairness, and convenience. The arguments they raise for and against transfer are considered below.

1. Potential for Coordination with the Related Downey Action

The pending class action in the Central District of California appears to present issues of law and fact that overlap somewhat with those in this case. Both cases involve United's alleged underpayment of benefits to out-of-network medical service providers. The courts in both actions may eventually need to decide whether United's reimbursement practices are lawful, and that decision may require a substantial amount of factual discovery. United stresses the efficiencies that can be achieved by coordinating that discovery in front of one judge. Forest contends that it is not necessary for the cases to be before one judge for discovery to be coordinated. The Court recognizes that both positions have merit.

There is some likelihood of duplicative litigation with respect to the Downey Action if the actions are kept in separate districts. But the gravity of that concern is somewhat diminished for two

---

[3] The Jones panel identified a non-comprehensive list of factors that a court might weigh in deciding whether to transfer a case. They are: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. This Court considers those Jones factors which it finds to favor or oppose transfer in this case, as well as other factors which bear on convenience and fairness in this particular action.

3

reasons. First, in light of the stay in the Downey Action, there is currently no litigating going on at all to be duplicated. Second, both counsel in this action are also associated with the Downey action, so the parties should be able to coordinate discovery on their own. In the event that rulings are made in one case that are relevant to disputes in the other, the Court expects that the parties will raise those rulings in argument.

The Court finds this to be a significant factor in the transfer analysis.

### 2. Delay in the Downey Action

The Downey Action has been stayed since Sept. 20, 2010 "until the resolution of the October 4, 2010 Wellpoint matters."[4] Those "Wellpoint matters" were taken under submission by Judge Gutierrez on November 22, 2010. United asserts that it expects a ruling in the Downey Action on its motion to dismiss—which was filed twelve months ago—"at any time." In view of the dockets in both the Wellpoint and Downey cases, that prognosis seems optimistic.

Based on the parties' representations and this Court's examination of the cases pending in the Central District, it appears that a transfer order would make the schedule in this case subservient to the schedules of a multidistrict litigation and a more complicated class action. The effect of a venue change would be indefinite, prolonged delay. Such a delay would prejudice Forest. The Court accords this factor substantial weight.

### 3. Plaintiff's Choice of Its Home Forum

There is a presumption, whatever its weight, in favor of the Plaintiff's choice of forum, particularly when it chooses its home district. Symmetrically, the Court has a local interest in providing a forum for the residents of the district to air their grievances. Forest's surgery center is located in San Jose, California, within the Northern District of California, while United is a national health insurance company. The Court is mindful of these policies, and finds them moderately persuasive.

---

[4] This Court takes judicial notice of the ECF docket and filings in the Downey Action and its related cases, from which the information about the activity in those cases is taken.

4

### 4. Convenience to the Parties

United argues that because San Jose and Los Angeles are only a few hundred miles apart, it is at most a minor inconvenience for Forest to litigate this case in the Central District rather than in the Northern District. But this argument must cut both ways—it is likewise only a minor inconvenience for United to litigate in San Jose. Either way, the Court agrees that the proximity of the two courthouses makes geographical inconvenience a minor factor in the transfer analysis here, outweighed in this case by other concerns.

### 5. Relative Docket Speeds of the Northern and Central Districts

United points out that the median time from filing to disposition in civil cases is shorter in the Central District than in the Northern District, and argues that this fact supports transfer so that the parties may reach a speedy resolution. While statistics about average docket speed across all cases are somewhat predictive of a particular case's length, there is other information here that casts significant doubt on whether disposition will be reached more quickly in the Central District. United's stated rationale for seeking to change venue is to coordinate the case with the Downey Action, which has been pending for two years and stayed for nine months. The Court is not persuaded that this case will move any more quickly in the Central District; indeed, the reverse appears more likely to be true.

**C. Discussion**

A decision from this district in a recent and similar case demands consideration. In <u>Schott v. Ivy Asset Mgmt. Corp.</u>, 2010 WL 4117467 (N.D. Cal. Oct. 19, 2010), a change of venue was granted over the plaintiff's objection where the transferee district had, as is the case here, a larger and more complicated putative class action pending which the plaintiff could join. The court found that the risk of inconsistency and the inefficiency of duplicative litigation outweighed the inconvenience to the plaintiff.

But this Court finds that the inconvenience to Forest in this action is greater than the inconvenience in *Schott*, and that the added prejudice is enough to tip the balance against transfer. Schott, though he was compelled to litigate his case in New York instead of in California, at least

5

had his case consolidated with an action that was being actively heard. It appears that if this case were transferred, Forest would be subject to a stay over which it would have little influence or control, and therefore would be prevented from expeditiously pursuing the relief it desires.

Accordingly, United's motion to transfer is DENIED. If the circumstances underlying this decision change substantially, United may seek the Court's leave—by administrative motion, pursuant to Civil L.R. 7–11—to renew its request for a change of venue.

**III. MOTION TO DISMISS**

**A. Standards**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief can be granted. In deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). However, "material which is properly submitted as part of the complaint may be considered." Id.

In considering a motion pursuant to Rule 12(b)(6), the court must accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. —, 129 S. Ct. 1937, 1950 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). Even so, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

"[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (internal citations omitted); Fed. R. Civ. P. 8(a). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. A complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough

6

to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

Leave to amend should be freely granted "unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv–Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000); Fed. R. Civ. P. 15(a).

**B. Analysis**

1. ERISA

United argues that the First Amended Complaint ("FAC") does not plead the ERISA claim with adequate specificity. Specifically, United argues that the FAC failed to: 1) identify the patients who assigned to Forest their claims for benefits; 2) identify the terms of the benefit plans that were allegedly breached; 3) show that administrative remedies were exhausted; and 4) include facts showing that United is a proper defendant.

*Naming of Individual Patients*

The FAC does not name the 139 patients who assigned their benefits to Forest. If it had, Forest might have run afoul of HIPAA, which requires health care providers to guard patients' "protected health information." Forest was justified in not including their names: healthcare providers suing for benefits under ERISA "can easily satisfy pleading requirements under Twombly without jeopardizing the privacy of individual patients by sufficiently describing the services rendered along with the relevant ERISA plan. The name of each individual beneficiary is not necessary at the pleading stages, only the description of the *class* of beneficiaries is required." In re Managed Care Litigation, 2009 WL 742678 (S.D. Fla. Mar. 20, 2009).

The FAC alleges,

> Between Feburary, 2009 and August 2010 (the "Relevant Period"), FASA provided surgical services to 139 United Insureds for which it has yet to be paid or has only partially been paid. (FAC ¶ 10.)

This description of a class of beneficiaries—which includes essentially the same information as the description in the complaint in In re Managed Care Litigation—gives United notice of Forest's claims, and sufficiently circumscribes those claims.

7

*Identification of Specific Plan Terms*

29 U.S.C. § 1132(a)(1)(B) allows for recovery of benefits due "under the terms of [an ERISA] plan." To state a claim under that section, a plaintiff must allege facts that establish the existence of an ERISA plan as well as the provisions of the plan that entitle it to benefits. A plan is established if a reasonable person "can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc). Failure to identify the controlling ERISA plans makes a complaint unclear and ambiguous. In re Managed Care Litigation at *3.

Forest's FAC states only that the benefits agreements on which it seeks relief "include employee welfare benefit plans covered by [ERISA]," and that "[u]nder the terms of the relevant written ERISA plans and written Assignment Agreements, United Healthcare was obligated to pay FASA the amount of the Claims submitted under the ERISA plans for the procedures performed by FASA's medical staff for the United Insureds." (FAC ¶¶ 9, 17.) These conclusory allegations are insufficient to meet the Twombly and Iqbal pleading standards. "Although the allegations in the complaint do not need to describe a given plan in detail, such as to identify each plan's policy number, the allegations must be sufficient to raise the existence of an ERISA plan above [a] speculative level." In re Managed Care Litigation at *3. Furthermore, the alleged violations are insufficient without reference to the terms of the controlling plans. See id. These deficiencies mandate the dismissal of the ERISA cause of action.

*Administrative Exhaustion*

While the ERISA statute itself does not articulate an exhaustion requirement, courts have consistently held that plaintiffs must pursue the plan's internal review procedures before filing suit under § 502. Vaught v. Scottsdale Healthcare Corp. Health Plan, 546 F.3d 620, 626–27 (9th Cir. 2008); Amato v. Bernard, 618 F.2d 559, 566, 568 (9th Cir. 1980). One among many reasons for requiring exhaustion is to assemble a factual record that will assist the court in reviewing the parties' actions. However, there is disagreement among the federal courts as to whether a plaintiff must

8

affirmatively plead exhaustion or if the failure to exhaust is merely a defense.[5] The Supreme Court has indicated that, under the Federal Rules, exhaustion of remedies is typically an affirmative defense rather than a pleading requirement, Jones v. Bock, 549 U.S. 199, 212 (2007), and this Court finds no reason to depart from that general rule. Accordingly, dismissal on the basis that Forest failed to affirmatively allege exhaustion would be inappropriate.

This Court follows the holdings in Glaus v. Kaiser Foundation Health Plan, 2009 WL 2905961 (N.D. Cal. Sept. 8, 2009) that "the Court is not precluded from determining, in the context of a motion to dismiss, whether [the plaintiff] has exhausted her administrative remedies" and that "where . . . both parties have offered evidence outside the pleadings, the Court may determine whether such evidence demonstrates a failure to exhaust." Glaus at *2. In both cases that United cites where motions to dismiss were granted for failure to exhaust, however, the lack of exhaustion was decided as a matter of law on the basis of undisputed facts.[6]

Here, the parties agree that Forest did not *plead* administrative exhaustion, but whether Forest actually did exhaust available administrative remedies is a fact in question. Forest submitted a declaration indicating that its regular practice is to submit multiple appeals when claims are denied. (Decl. of Travis Grant in Supp. of Pl.'s Mot. Dismiss First Am. Compl. ¶¶ 5–6.); United, while offering no positive evidence, points to Forest's alternative argument—that, even if it did fail to fully pursue administrative remedies, such a pursuit would have been futile—along with Forest's allegation that it "demanded payment from United Healthcare in the amount of $263,940 for the balance of a portion of the unpaid and partially paid Claims" (FAC ¶ 14) as an admission of its failure to seek redress of all its alleged injuries under internal plan procedures.

---

[5] Compare Encompass Office Solutions v. Ingenix, — F. Supp. 2d —, 2011 WL 1229737, at *22 (E.D. Tex.), and Medical Alliances v. Am. Medical Security, 144 F. Supp. 2d 979, 982 (N.D. Ill. 2001) (plaintiff need not plead exhaustion), with In re Managed Care Litigation, 595 F. Supp. 2d 1349 (S.D. Fla. Jan. 28, 2009) (citing Byrd v. MacPapers, Inc., 961 F.2d 157, 160–61 (11th Cir. 1992) ("[T]he Eleventh Circuit requires plaintiff to affirmatively plead exhaustion on the face of the complaint.").

[6] See Glaus at *2–*4; Hansen v. Jeffco Painting & Coating, Inc., 1993 WL 204260 (N.D. Cal. June 8, 1993).

9

Taking together all the evidence now before it, the Court finds that the most plausible version of the facts is that Forest did pursue the available administrative appeals and, when those failed, submitted a demand for payment outside the administrative scheme before initiating litigation. Accordingly, United has not submitted enough evidence under any standard to show that Forest failed to meet the exhaustion requirement. Since United has failed to establish nonexhaustion, Forest's alternative futility argument need not be reached at this time.

*Whether United is a Proper Defendant*

Each of the assignments of benefits on which Forest seeks to recover came from a patient who "was insured under a written insurance policy issued by Defendant." (FAC ¶ 7.) Those benefits arose out of the patients' benefit plans; Forest further alleges that "United Healthcare is the administrator for the employee welfare benefit plans." (FAC ¶¶ 7–8.) United argues that the allegations fail to establish that it is the *plan* administrator, which is a proper defendant for an ERISA recovery of benefits action, rather than a *claims* administrator, which is not.

In the months since United's motion was briefed, the Ninth Circuit decided a case that makes resolution of this issue unnecessary. Cyr v. Reliance Standard Life Ins. Co., — F.3d —, 2011 WL 2464440 (9th Cir. June 22, 2011) (en banc) expands the set of defendants who may be properly sued under § 1132(a)(1)(B) to include the insurer. In doing so, Cyr explicitly overrules Ford v. MCI Communications Corp. Health & Welfare Plan, 399 F.3d 1076 (9th Cir. 2005) and Everhart v. Allmerica Fin. Life Ins. Co., 275 F.3d 751 (9th Cir. 2001), the two cases on which United relies. Regardless of whether United was the claims administrator or the plan administrator (or both, or neither), it was undoubtedly the insurer. Thus, United's argument that it is not a proper defendant fails as a matter of newly-decided law.

2. State Law Breach Claims

Forest's claims for breach of contract and breach of the implied covenant of good faith and fair dealing are based on the existence of certain benefit plans not covered by ERISA. But the FAC does no more to establish the existence of these plans than it does for the plans which are covered by ERISA. The standard of review for evaluating a pleading of the existence of a contract is slightly

10

different for a state law contract than the standard for an ERISA plan, but the result here would likely be the same.

In any event, a district court "may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C § 1367(a)] if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Having dismissed the only claim giving rise to federal question jurisdiction—and there being no allegation of diversity of citizenship—this Court does decline, at least until it sees a further amended complaint, to decide the issue of whether Forest has stated state law claims for breach.

## IV. ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that United's Motion to Transfer Venue is DENIED and United's Motion to Dismiss First Amended Complaint is GRANTED. Forest is granted leave to amend its complaint. Forest may file a second amended complaint on or before August 12, 2011; if it elects not to do so, the Court will close the file. United's motion to stay discovery pending resolution of its Motion to Dismiss is DENIED AS MOOT in light of the present resolution of the Motion to Dismiss.

Dated: July 13, 2011



EDWARD J. DAVILA
United States District Judge

11

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Bryan Scott Westerfeld bwesterfeld@calemployerlaw.com
Daron Lael Tooch dtooch@health-law.com
Greg B Sherman gsherman@health-law.com
Katherine Renee Miller kmiller@health-law.com
Larry Andrew Walraven lwalraven@calemployerlaw.com

**Dated: July 13, 2011**  **Richard W. Wieking, Clerk**

**By:  /s/ EJD Chambers**

**Elizabeth Garcia**

**Courtroom Deputy**