## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

#133

| Case No. | CV 12-2916 PSG (FFMx) | Date | December 13, 2013 |
|---|---|---|---|
| Title | *Forest Ambulatory Surgical Associates, L.P. v. Ingenix, Inc., et al.* | | |

Present:    The Honorable Philip S. Gutierrez, United States District Judge

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings:        (In Chambers) Order GRANTING in part and DENYING in part Defendants' Motion to Dismiss**

Pending before the Court is certain Defendants' motion to dismiss Plaintiff's Third Amended Complaint.[1]  Dkt. # 133.  The Court finds the matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); L.R. 7-15.  After considering the moving and opposing papers, the Court GRANTS in part and DENIES in part the motion.

I.    Background

Plaintiff Forest Ambulatory Surgical Associates, L.P. ("Plaintiff" or "FASA") seeks relief against Defendants United Healthcare Insurance Company, UnitedHealth Group, United Healthcare Services, and Ingenix, Inc. (collectively, "United" or the "United Defendants"), and against the health plans and plan administrators ("Plan Defendants") who contracted with United to process the benefit claims submitted by Plaintiff to United.  *See* Dkt. # 132.  United and the Plan Defendants will be collectively referred to as the "Defendants."

---

[1] The moving defendants include:  Ingenix, Inc., United HealthCare Services, Inc., United Healthcare Insurance Company, UnitedHealth Group, Inc., and multiple health plans. Nonmoving Defendants include:  AG Neovo Technology Corp, Health Benefits Plan, AG Neovo Technology Corp., National Railroad Passenger Corporation d/b/a Amtrak, Eclipsys Corporation, Mahindra Satyam Welfare Benefit Plan, NXP Semiconductors Welfare Benefit Plan, NXP Semiconductors USA, Inc., Qualcomm Incorporated Health Benefit Plan, SVB Financial Group Health Plan, Qualcomm Incorporated, Administrative Committee of Delta Airlines, Inc., and Mentor Graphics Corporation.  *See* Dkt. # 132.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

#133

| Case No. | CV 12-2916 PSG (FFMx) | Date | December 13, 2013 |
|---|---|---|---|
| Title | *Forest Ambulatory Surgical Associates, L.P. v. Ingenix, Inc., et al.* | | |

A.   Factual Background

United is one of the largest health insurers in the United States, underwriting and issuing thousands of health insurance plans.  *See Third Amended Complaint* ("TAC") ¶ 139.  Most of the plans at issue here are governed by the Employee Retirement Income Security Act ("ERISA").  *Id.* ¶¶ 9-117.  Some ERISA plans are fully insured by United, while others are self-funded with United functioning as the claims administrator.  *Id.* ¶¶ 144-45.  In both cases, United's network of providers is generally available to the ERISA plans.  *Id.* ¶ 143.  Some health plans permit members to access health care providers who are outside the network in exchange for higher premiums or contributions.  *Id.* ¶ 148.

Plaintiff in this action is an out-of network surgical center that provides healthcare services related to procedures performed at its facility in San Jose, California.  *Id.* ¶ 132.  From 2007 to the present, Plaintiff provided health care services to patients who, at the time Plaintiff provided the services, were members of health benefit plans for which Defendants exercised administrative responsibilities.  *Id.* ¶ 133.   As a condition of the provision of services by Plaintiff, each patient signed an agreement assigning his or her health benefits to Plaintiff.  *Id.* ¶¶ 127-129.

Plaintiff alleges that it submitted at least 1,500 claims for payment to United.  *Id.* ¶ 155.  Plaintiff also alleges that Defendants promised to reimburse these claims in an amount equal to the lower of either its actual billed charge, or the "usual, customary and reasonable" rate ("UCR rate").  *Id.* ¶¶ 160-62.  According to Plaintiff, a proper UCR rate must be based on the prevailing charge for similar services by similar types of surgical centers within the same geographical market.  *Id.* ¶ 160.  Plaintiff alleges that Defendants represented that this was how the UCR rate would be calculated.  *Id.* ¶¶ 160-67.

Nonetheless, Plaintiff ultimately avers that Defendants underpriced and underpaid Plaintiff for its out-of-network services by using flawed methodologies to determine the UCR rate.  *Id.* ¶ 167.  In particular, Plaintiff alleges that United improperly relied on at least five flawed reimbursement methodologies in falsely-calculating the UCR rate:     (1) the Highest In-Network Rate Multiplier ("HINRM"); (2) a multiplier of the applicable Medicare rate ("MNRP"); (3) a multiplier of the Official Medical Fee Schedule ("OMFS") promulgated by the California Division of Workers' Compensation; (4) the Ingenix Database; and (5) "other improper methods for pricing [Plaintiff's] out-of-network claims that do not appropriately establish UCR."  *See id.* ¶ 170-75.  According to Plaintiff, each of these reimbursement methodologies fails to take into consideration the necessary factors for determining the proper

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

#133

| Case No. | CV 12-2916 PSG (FFMx) | Date | December 13, 2013 |
|---|---|---|---|
| Title | *Forest Ambulatory Surgical Associates, L.P. v. Ingenix, Inc., et al.* | | |

UCR rate, and does not compare Plaintiff's actual charges with the usual, customary or competitive charges for similar services in the relevant geographic area. *Id.* ¶ 177.

    B.    <u>Procedural History</u>

On September 29, 2010, Plaintiff filed suit to recover these benefits in state court. *See* Dkt. # 1, Ex. A. Since some of the plans are allegedly covered by ERISA, Defendants removed the case to federal court, in the Northern District of California. Dkt. # 1. Plaintiff then amended its complaint to explicitly plead a cause of action for recovery of benefits under ERISA. Dkt. # 11. Defendants moved to dismiss each of the claims in Plaintiff's First Amended Complaint for failure to state a claim. Dkt. # 23. Judge Davila granted the motion on the ground that Plaintiff had failed to identify the benefit plans or the terms of the benefit plans that were allegedly breached. Dkt. # 47.

Defendants then moved to transfer this case to the Central District of California because Plaintiff's counsel has a class action (the "Downey Action") pending in the Central District of California against United and other codefendants. *See* Dkt. # 25. Judge Davila granted the motion to transfer and dismissed Defendants' pending motion to dismiss Plaintiff's Second Amended Complaint ("SAC"). Defendants re-noticed the motion. Dkt. # 120.

On March 12, 2013, this Court granted in part and denied in part Defendants' motion to dismiss Plaintiff's SAC. Dkt. # 124. The Court denied Defendants' motion with respect to Plaintiff's claims for unlawful, unfair, and fraudulent business practices under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"); breach of contract; breach of the covenant of good faith and fair dealing; and for recovery of benefits under 29 U.S.C. § 1332(a)(1)(B). *Id.* at 7-16. The Court granted Defendants' motion as to Plaintiff's quantum meruit claim, and recovery of benefits claim under 29 U.S.C. § 1132(a)(2), without leave to amend. *Id.* at 14-15. However, the Court informed Plaintiff that it could file an amended complaint, if it wished to do so. *Id.* at 17.

On May 8, 2013, Plaintiff filed a Third Amended Complaint ("TAC"). Dkt. # 132. In addition to raising all of the aforementioned claims, Plaintiff added two new claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c)-(d). *See TAC* ¶¶ 237-274. Specifically, Plaintiff brings a substantive RICO claim pursuant to section 1962(c) against United, and a section 1962(d) RICO conspiracy claim against United and the Plan Defendants. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

#133

| Case No. | CV 12-2916 PSG (FFMx) | Date | December 13, 2013 |
|----------|----------------------|------|-------------------|
| Title | *Forest Ambulatory Surgical Associates, L.P. v. Ingenix, Inc., et al.* | | |

Now before the Court is Defendants' motion to dismiss Plaintiff's TAC pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. # 133. Defendants specifically target Plaintiff's RICO and UCL claims for dismissal. *Id.*

II.   Legal Standard

A.   Motion to Dismiss for Failure to State a Claim

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a cause of action if the plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). In evaluating the sufficiency of a complaint under Rule 12(b)(6), courts should be mindful that the Federal Rules of Civil Procedure generally require only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required to survive a Rule 12(b)(6) motion to dismiss, a complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007)). Rather, the complaint must allege sufficient facts to support a plausible claim for relief. *See id.*

In evaluating a Rule 12(b)(6) motion, the court must engage in a two-step analysis. *See id.* at 679. First, the court must accept as true all non-conclusory, factual allegations made in the complaint. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). Based upon these allegations, the court must draw all reasonable inferences in favor of the plaintiff. *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). Second, after accepting as true all non-conclusory allegations and drawing all reasonable inferences in favor of the plaintiff, the court must determine whether the complaint alleges a plausible claim for relief. *See Iqbal*, 556 U.S. at 679. Despite the liberal pleading standards of Rule 8, conclusory allegations will not save a complaint from dismissal. *See id.* at 678-79.

III.   Discussion

A.   Racketeer Influenced and Corrupt Organization Act

Plaintiff's TAC alleges that Defendants violated sections 1962(c) and 1962(d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO") through the conduct of an association-in-fact enterprise. *See* 18 U.S.C. §§ 1962(c)-(d); *see also TAC* ¶¶ 238-274.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

#133

| Case No. | CV 12-2916 PSG (FFMx) | Date | December 13, 2013 |
|----------|----------------------|------|-------------------|
| Title | *Forest Ambulatory Surgical Associates, L.P. v. Ingenix, Inc., et al.* | | |

Defendants' Motion contends that Plaintiff's RICO claims must be dismissed on both procedural and substantive grounds. *See Mot.* 4:4-16:22. The Court addresses Defendants' procedural argument first and then turns to Defendants' substantive argument for dismissing these claims.

        *i.*    *Procedural Issues*

      Before Defendants delve into the merits of Plaintiff's RICO claims, they ask the Court to strike Plaintiff's RICO claims from the TAC. *See Mot.* 4:4-5:25; *Reply* 1:11-3:11. Defendants assert that the Court's *March 2013 Order* granting in part and denying in part Defendants' motion to dismiss the SAC did not give Plaintiff *carte blanche* to revise the SAC however it pleased. *See Mot.* 4:4-6. Rather, according to Defendants, the *March 2013 Order* "only allowed Plaintiff to amend those causes of action insufficiently pled" in the SAC. *Mot.* 4:6-7. As a purely textual matter, the Court disagrees with Defendants. The *March 2013 Order* does not circumscribe the scope of leave given to Plaintiff to amend the SAC. *See* Dkt. # 124. Instead, the Court gave rather broad instructions to Plaintiff by stating that "[i]f Plaintiff[] wish[ed] to file an amended complaint, [it] must do so by April 1, 2013." *Id.* at 17. As a result, Plaintiff's newly added RICO claims do not surpass the scope of leave that was granted in the *March 2013 Order*. *Id.* If anything, because the Court granted Plaintiff leave to amend without limitation, it implicitly authorized Plaintiff to raise these new RICO claims. *See, e.g., Topadzhikyan v. Glendale Police Dept.*, No. CV 10-387 CAS (SSx), 2010 WL 2740163, at *3 n.1 (C.D. Cal. July 8, 2010) (declining to strike new claims where court granted leave to amend without limitation); *Gilmore v. Union Pacific R. Co.*, No. 09-cv-02180-JAM-DAD, 2010 WL 2089346, at *4 (E.D. Cal. May 21, 2010) (finding that plaintiff was not required to seek leave to add new claims where court granted leave to amend without limitation); *cf. Albano v. Cal-W. Reconveyance Corp.*, No. 4:12-cv-4018 KAW, 2013 WL 772665, at *2 (N.D. Cal. Feb. 28, 2013) (striking newly-added RICO claims because court granted leave to amend to cure specific deficiencies in other claims). The Court's conclusion does not change just because it specified certain claims for dismissal in the event that Plaintiff failed to file an amended complaint by the April 1, 2013 deadline. *Cf. Reply* 1:23-2:2.

      Defendants' second argument fares no better. Defendants further aver that Plaintiff's newly-minted RICO claims must be stricken because Plaintiff did not seek leave of Court under Rule 15 of the Federal Rules of Civil Procedure to interject such claims into this litigation. *See Mot.* 4:25-27. Yet again, Defendant ignores the express language of the *March 2013 Order*. In that Order, the Court expressly allowed Plaintiff to file a TAC as long as Plaintiff did so by a certain date. Dkt. # 124. Plaintiff took the Court up on its offer, filing the TAC in accordance with the Court's express instructions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

#133

| Case No. | CV 12-2916 PSG (FFMx) | Date | December 13, 2013 |
|----------|----------------------|------|-------------------|
| Title | *Forest Ambulatory Surgical Associates, L.P. v. Ingenix, Inc., et al.* | | |

What's more, Defendants fail to state any viable prejudice that they might suffer as a result of Plaintiff's newly added RICO claims. Although Defendants argue that Plaintiff's RICO claims "radically change the landscape of this case," thereby prejudicing Defendants, this assertion does not hold water. *Mot.* 5:14-15. Defendants are well aware of the fact that they face identical RICO claims in the Downey Action currently pending before this Court. *See Downey Surgical Clinic, Inc. v. UnitedHealth Group, Inc.*, No. CV-09-05457, Dkt. # 92. Indeed, over the past three years, Defendants have repeatedly argued that this case is so similar to the Downey Action that this case should be transferred to this very Court – and it was based on Defendants' motion. Dkt. # 103. This case was even assigned to this Court because its raises "the same or substantially related or similar questions of law and fact" as the Downey Action. Dkt. # 114. As such, Defendants may not now turn the table on Plaintiff by arguing that Plaintiff's newly added RICO claims will "radically change the landscape of this case." *Mot.* 5:14-15.

Furthermore, Defendants' citation to the Ninth Circuit's decision in *Acri* does not change the Court's position. *See Mot.* 5:5-19; *see also Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986). In *Acri*, the Ninth Circuit found that the district court did not abuse its discretion in denying plaintiff leave to amend because plaintiff delayed in raising new claims for purely tactical reasons. *See Acri*, 781 F.2d at 1398 ("Plaintiffs' attorney admitted that plaintiffs' delay in bringing the section 101 cause of action was a tactical choice."). Unlike in *Acri*, Defendants make no claim of strategic delay by Plaintiff here, and the Court similarly finds none. *Acri* is therefore inapposite to the facts at hand.

Defendants' additional citation to the Ninth Circuit's decision in *Morongo Band of Mission Indians* fares no better. *See Mot.* 5:15-19; *see also Morongo Band of Mission Indians v. Rose*, 893 F.2d at 1079. In *Morongo Band of Mission Indians*, the Ninth Circuit affirmed the district court's denial of leave to add RICO claims because the claims posed a "radical shift in [the] direction" of the case. *Id.* at 1079. Whereas plaintiff had originally brought a cause of action to enforce a tribal ordinance prohibiting bingo operations on its reservation, plaintiff then attempted to amend the complaint to add RICO claims. *Id.* at 1076-79. Such an unexpected and drastic shift in plaintiff's pleadings was too much for the Ninth Circuit to allow. *Id.* at 1079. The Ninth Circuit also denied plaintiff leave to add these new RICO claims because doing so would have established federal jurisdiction that was previously deemed lacking. *See id.* Neither one of these issues is presented in this case. Regardless of the presence or absence of Plaintiff's RICO claims, there is still federal jurisdiction. And, more importantly, the RICO claims that Plaintiff now brings in the TAC are a natural outgrowth of the allegations of the SAC, unlike in *Morongo Band of Mission Indians*. *See Opp.* 6:15-24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

#133

| Case No. | CV 12-2916 PSG (FFMx) | Date | December 13, 2013 |
|----------|----------------------|------|-------------------|
| Title | *Forest Ambulatory Surgical Associates, L.P. v. Ingenix, Inc., et al.* | | |

Finally, the Court briefly notes that this case remains in the pleading stage as no written or oral discovery has taken place. This furthers the Court finding that Defendants suffer no prejudice as a result of Plaintiff's newly added RICO claims. *See, e.g.*, *PB Farradyne, Inc. v. Peterson*, C 05-3447 SI, 2006 WL 2578273, at * 2 (N.D. Cal. Sept. 6, 2006) (permitting amendment where "Defendant ha[d] not demonstrated any material prejudice that would flow as a result of the proposed amendment, and the litigation ha[d] not proceeded to such an advanced phase that the amendments will result in any delay"). Defendants' insistence that it has been prejudiced in any substantial way thus lacks merit.

For this reason and all of the additional reasons discussed *supra*, the Court exercises its discretion and denies Defendants' request to strike Plaintiff's RICO claims from the TAC, and now entertains Plaintiff's RICO claims on the merits.

### ii. The Merits

Plaintiff alleges that United and Plan Defendants violated sections 1962(c) and 1962(d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO") through the conduct of an association-in-fact enterprise. *See* 18 U.S.C. §§ 1962(c)-(d); *see also TAC* ¶ 237-274. Defendants argue that Plaintiff insufficiently pleaded its RICO claims in the TAC and that they should be dismissed as a result. *See Mot.* 6:4-16-23.

### a. Participation in a RICO Enterprise – 18 U.S.C. § 1962(c)

Section 1962(c) of RICO states that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). For Plaintiff to state a claim under § 1962(c), it must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *accord Walter v. Drayson*, 538 F.3d 1244, 1247 (9th Cir. 2008). "RICO is to be read broadly" and "liberally construed to effectuate its remedial purposes." *Sedima*, 473 U.S. at 497-98; *accord Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

#133

| Case No. | CV 12-2916 PSG (FFMx) | | Date | December 13, 2013 |
|---|---|---|---|---|
| Title | *Forest Ambulatory Surgical Associates, L.P. v. Ingenix, Inc., et al.* | | | |

Liability for participating in the "conduct" of a RICO enterprise extends only to those who "have some part in directing [the enterprise's] affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). When a defendant directs a RICO enterprise's affairs, more is required than "simply being involved" and "[s]imply performing services for the enterprise." *Walter*, 538 F.3d at 1249. It is also "not enough that [a defendant] fail[s] to stop illegal activity." *Id.* at 1248. More relevant considerations include whether the defendant "occup[ies] a position in the 'chain of command' . . . through which the affairs of the enterprise are conducted," whether the defendant "knowingly implement[ed] the decisions of upper management," and whether the defendant's "participation was 'vital' to the mission's success." *See id.* at 1249. Finally, RICO liability requires a showing that defendant directed or controlled not only its own affairs, but also the RICO enterprise. *E.g.*, *Reves*, 507 U.S. at 185 ("[L]iability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise*'s affairs,' not just their *own* affairs.") (emphasis in original); *Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1083 (9th Cir. 2000) ("At minimum, [an enterprise] must . . . control[] and direct[] the affairs of the group . . . .") (internal citations omitted), *overturned on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007) ; *see also In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1034 (C.D. Cal. 2011) ("The submission of its own data does not plausibly show that WellPoint controlled the other members in the associated-in-fact enterprise ."); *Ally Bank v. Castle*, 11-CV-896 YGR, 2012 U.S. Dist. LEXIS 118452, at *40-41 (N.D. Cal. Aug. 20, 2012) ("A proper RICO defendant must have exerted 'managerial control' over the enterprise.") (citing *Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993)); *accord Horn D.D.S., Inc. Profit Sharing Plan v. High Point Services, Inc.*, 12-01604 VAP (DTBx), 2013 U.S. Dist. LEXIS 166612, at *3-4 (C.D. Cal. Nov. 21, 2013).

Plaintiff highlights six allegations in the TAC that "clearly" demonstrate that United directed or controlled the alleged RICO enterprise. *Opp.* 8:19-9:12. However, the Court is not convinced – none of the six allegations "clearly" show that United directed or controlled the alleged RICO enterprise.

Of the new allegations raised in Plaintiff's TAC, three are predicated upon United's "promotion" or "propagation" of purported flawed reimbursement methodologies. *See id.* 8:21-9:10. For instance, Plaintiff alleges that "Defendant UnitedHealth Group *promoted* the Ingenix Database as an 'industry standard' for determining UCR amounts, in order to cloak its use of the flawed Database in the appearance of legitimacy and accuracy." *Id.* 8:21:23 (emphasis added); *see also TAC* ¶ 181. Plaintiff also claims that "Ingenix has *promoted* its flawed systems for calculating non-contracted claims as a cost-saving mechanism." *Opp.* 9:5-7 (emphasis added); *see also TAC* ¶ 207. And finally, Plaintiff avers that "[b]y *propagating* the improper

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

#133

| Case No. | CV 12-2916 PSG (FFMx) | Date | December 13, 2013 |
|---|---|---|---|
| Title | *Forest Ambulatory Surgical Associates, L.P. v. Ingenix, Inc., et al.* | | |

methodologies under the guise of providing legitimate administrative services to the ERISA Plans, United directed and controlled the affairs of the enterprise."  *Opp.* 9:9-11 (emphasis added); *see also TAC* ¶ 255.

Plaintiff's reiteration of United's alleged "promotion" and "propagation" of flawed reimbursement methodologies presumably means that Plaintiff believes such allegations show that United conducted a RICO enterprise.  But this is not so.  The creation and promotion of flawed reimbursement methodologies such as the Ingenix database does not plausibly show that United directed or controlled the other members in the associated-in-fact enterprise.  *See Downey Surgical Clinic, Inc. v. Ingenix Inc.*, CV 09-5457 PSG (CTx), Dkt. # 155 at 19 (finding that United's alleged "promotion" of flawed Ingenix methodologies for underpricing out-of-network ASC claims failed to show United's direction or control of a RICO enterprise); *see also Webster v. Omnitrition Int'l Inc.*, 79 F.3d 776, 789 (9th Cir. 1996) (corporate officer who made statements promoting fraudulent scheme determined to have a "purely ministerial" rather than managerial role in enterprise).  At best, United's promotion of these allegedly flawed reimbursement methodologies shows only a business relationship between Defendants.  *See Downey Surgical Clinic, Inc. v. Ingenix Inc.*, CV 09-5457 PSG (CTx), Dkt. # 155 at 19 ("[T]he existence of a business relationship between Defendants without more does not show that United conducted the enterprise."); *see also Goren v. New Vision Intern., Inc.*, 156 F.3d 721, 727-28 (7th Cir. 1998) (holding that an established business relationship between the defendants and the enterprise was insufficient to state a claim that the defendants directed the affairs of the alleged fraudulent marketing enterprise); *Paycom Billing Servs., Inc. v. Payment Res. Int'l.*, 212 F. Supp. 2d 732, 741 (W.D. Mich. 2002) (dismissing RICO claim because allegations that defendant "engaged in certain conduct pursuant to or in violation of [an] agreement" did not show that it directed an enterprise by controlling or directing other defendants).

Moreover, Plaintiff's attempts to conjoin such phrases with statements like "United directed and controlled the affairs of the enterprise" are equally unavailing.  *TAC* ¶ 255.  Devoid of any factual predicate related to United's direction and control of a RICO enterprise, this formulaic recitation of the elements of a RICO cause of action is patently conclusory, and prime suspect for disregard.  *See Iqbal*, 556 U.S. at 678; *see also In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d at 1035 ("Plaintiffs' conclusory statement that 'WellPoint and UnitedHealth . . . [were] involved in decision making regarding the database' does suggest RICO conduct, but it is too general to satisfy *Twombly*'s pleading instructions.") (internal citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

#133

| Case No. | CV 12-2916 PSG (FFMx) | | Date | December 13, 2013 |
|----------|----------------------|---|------|-------------------|
| Title | *Forest Ambulatory Surgical Associates, L.P. v. Ingenix, Inc., et al.* | | | |

In addition to United's alleged "promotion" and "propagation" of flawed reimbursement methodologies, Plaintiff's remaining allegations similarly fail to show that United directed or controlled a RICO enterprise.  Plaintiff first alleges that "United set up a classic shell game, offering purported 'administrative' services to its clients to save them money, and then lying to Plaintiff and to members by purporting that the lower rates paid reflected a robust UCR-based method." *Opp.* 8:23-25; *see also TAC* ¶ 241.  The allegation continues to state that "United was the corporate equal to the neighborhood thug that offered 'protection' to local stores on the block against supposedly high priced outside vendors." *Opp.* 8:25-27; *see also TAC* ¶ 241.  Nevertheless, a fundamental question remains:  Even if United "set up a classic shell game," acting as the "corporate equal to the neighborhood thug," does this allegation show that United directed or controlled other members of a RICO conspiracy?  No, it does not.  The allegation lacks any reference to United's control over the Plan Defendants.  Thus, even drawing all reasonable inferences in favor of Plaintiffs, the allegation does not show that United directed or "exerted 'managerial control' over the [alleged] enterprise." *Ally Bank*, 2012 U.S. Dist. LEXIS 118452, at *41; *see also In re WellPoint, Inc. Out-of-Network "UCR" Rates Lit.*, MDL 09-2074 PSG (FFMx), Dkt. # 389 at 20 ("Plaintiffs are still unable to allege that WellPoint participated in any decision-making on behalf of Ingenix.").

Plaintiff's next allegation meets the same fate.  Plaintiff asserts that "Defendant Ingenix played an active and crucial role in obtaining faulty charge data for use in the Ingenix database . . . and otherwise manipulat[ed] the charge data . . . thus enabling Defendants to derive inappropriate UCR amounts and underpay the Plaintiff for its services." *Opp.* 8:27-9:2; *TAC* ¶ 180.  However, the creation and use of flawed Ingenix methodologies does not plausibly show that United directed or controlled other members of an associated-in-fact enterprise. *See Downey Surgical Clinic, Inc. v. Ingenix Inc.*, CV 09-5457 PSG (CTx), Dkt. # 155 at 19; *see also In re WellPoint, Inc. Out-of-Network "UCR" Rates Lit.*, MDL 09-2074 PSG (FFMx), Dkt. # 389 at 20 ("WellPoint's submission of its own data did not show that WellPoint controlled the other members of the associated-in-fact enterprise, but only established that WellPoint was acting on its own by submitting data.").  Furthermore, the Court's conclusion does not change just because the flawed reimbursement methodologies *enabled* Defendants to underpay Plaintiff ERISA benefits, for "enabling" and "directing" are surely not the same thing. *Cf. Ally Bank*, 2012 U.S. Dist. LEXIS 118452, at *40-41 ("A proper RICO defendant must have exerted 'managerial control' over the enterprise, not simply have been used to further the wrongful efforts of the enterprise.").  This allegation thus fails to make the required showing as well.

Finally, Plaintiff makes one last attempt, in two separate allegations, to show that United directed or controlled a RICO enterprise. *See Opp.* 9:3-5, 9:6-8.  Compared to the Plaintiff's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

#133

| Case No. | CV 12-2916 PSG (FFMx) | Date | December 13, 2013 |
|----------|------------------------|------|-------------------|
| Title | *Forest Ambulatory Surgical Associates, L.P. v. Ingenix, Inc., et al.* | | |

allegations *supra*, the Court pays even less heed to these allegations because both statements show only how United conducted its own affairs, rather than the actions of a RICO conspiracy. For instance, Plaintiff alleges that "Defendant Ingenix developed these [flawed reimbursement] methodologies and used them to target members of the Plaintiff and other ASCs out of network with United." *Opp.* 9:6-8; *see also TAC* ¶ 207. Similarly, Plaintiff further alleges that "United Defendants not only developed improper UCR methodologies, but singled out FASA (among other ASCs) to which these methodologies would be applied." *Opp.* 9:3-5; *see also TAC* ¶ 245.

While these assertions do show that United might have targeted or singled out Plaintiff for improper treatment, nowhere do they show that United required, or at least directed, other members of the enterprise to do the same. *See Reves*, 507 U.S. at 185 (holding RICO liability requires a "showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their *own* affairs") (emphasis in original); *see also Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, No. 08–0840–CV–W–ODS, 2010 WL 5129288, at *7 (W.D. Mo. Nov. 22, 2010) ("The mere fact that the actions described were consistent with the enterprise's objectives and allegedly constituted violations of professional standards does not substitute for facts demonstrating [defendants] directed the enterprise's actions."). Without more, allegations like these do not "raise a right to relief above the speculative level," and thus fail to save Plaintiff's substantive RICO claim from dismissal. *Kearney v. Foley & Larder*, 05-cv-2112, 2011 WL 1119020, at *6 (S.D. Cal. March 28, 2011). Accordingly, the Court GRANTS Defendants' Motion as to Plaintiff's RICO claim under section 1962(c), WITH LEAVE TO AMEND.

### b. *RICO Conspiracy – 18 U.S.C. § 1962(d)*

Conspiring to violate RICO is a separate offense under 18 U.S.C. § 1962(d). To establish a violation of section 1962(d), a plaintiff must allege either an agreement that is a substantive violation of RICO or that defendants agreed to commit, or participated in, a violation of two predicate offenses. *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000); *Couch v. Cate*, 279 F. App'x 560, 657 (9th Cir. 2010). Although a civil RICO plaintiff may sue co-conspirators who might not themselves have violated one of the substantive provisions of section 1962, it is well established that a plaintiff may bring suit for civil conspiracy only if he has been injured by an action that is itself tortious. *See Beck v. Prupis*, 529 U.S. 494, 501 (2000). To this end:

[I]njury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO [ ] is not sufficient to give rise to a cause of action under §

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

#133

| Case No. | CV 12-2916 PSG (FFMx) | Date | December 13, 2013 |
|----------|----------------------|------|-------------------|
| Title | *Forest Ambulatory Surgical Associates, L.P. v. Ingenix, Inc., et al.* | | |

> 1964(c) for a violation of § 1962(d). As at common law, a civil conspiracy plaintiff cannot bring suit under RICO based on injury caused by any act in furtherance of a conspiracy that might have caused the plaintiff injury. Rather, consistency with the common law requires that a RICO conspiracy plaintiff allege injury from an act that is analogous to an "act of a tortious character," *see* 4 Restatement (Second) of Torts § 876, Comment b, meaning an act that is independently wrongful under RICO.

*Id.* at 505-06. In other words, a person injured by an over act done in furtherance of a RICO conspiracy has no cause of action unless the overt act proximately causing his injury is itself an act of racketeering. *See id.* at 501; *accord Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 650-51 (2008).

Having failed to adequately plead a substantive violation of RICO under section 1962(c), Plaintiff necessarily fails to plead that it was injured by an "overt act" that was itself a substantive RICO violation. *See Howard*, 208 F.3d at 751 ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO."); *accord Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *15 (N.D. Cal. June 15, 2009). Therefore, the Court GRANTS Defendants' Motion as to the Plaintiff's RICO conspiracy claim under section 1962(d), WITH LEAVE TO AMEND.

### B.   Unfair Competition Law

In addition to RICO claims, Plaintiff's TAC alleges that United violated all three of the "unlawful, unfair, [and] fraudulent" prongs of the UCL. *TAC* ¶ 277. Plaintiff specifically alleges, *inter alia*, that United used "arbitrary, capricious, and improper" methods to improperly underprice Plaintiff's claims for out-of-network services; submitted and accepted scrubbed data to the Ingenix Database such that it could not accurately determine UCR; and failed to correctly and accurately apply the criteria used to calculate UCR rates as set forth in Title 28 of the California Code of Regulations, section 1300.71 (a)(3)(B). *See id.* ¶ 276.

### i.   Procedural Issues

As a threshold matter, the Court addresses Plaintiff's argument that United is precluded from raising theories it could have raised in its motion to dismiss Plaintiff's SAC but did not. *See Opp.* 19:12-20. The law is well settled on this question. Defendants may do so. "Courts in this Circuit . . . permit[] defendants moving to dismiss an amended complaint to make arguments

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

#133

| Case No. | CV 12-2916 PSG (FFMx) | Date | December 13, 2013 |
|---|---|---|---|
| Title | *Forest Ambulatory Surgical Associates, L.P. v. Ingenix, Inc., et al.* | | |

previously made and to raise new arguments that were previously available." *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 903 F. Supp. 2d 880, 893 (C.D. Cal. 2012); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[T]he law is clear in this Circuit that an amended complaint supersedes the original, the latter being treated thereafter as nonexistent.") (internal citations omitted). Thus, Defendants may argue that Plaintiff's UCL claims are inadequately pled, even though Defendants failed raise the same arguments in their prior motion to dismiss Plaintiff's SAC.

Relatedly, the Court also finds it necessary to clarify the scope of its *March 2013 Order* denying in part and granting in part Defendants' motion to dismiss Plaintiff's SAC. *See* Dkt. # 124. In a footnote, Defendants' Motion attempts to resurrect the issue as to whether Plaintiff's UCL claims are ERISA preempted. *See Mot.* 17:26-28. Defendants state that while "Plaintiff bases its UCL claim on several different theories of liability . . . the only one that the Court identified as not being ERISA preempted was the fraud-based theory." *Id.*

The Court declines to entertain Defendants' footnote for two reasons. First, unlike Defendants' newly asserted theory regarding Plaintiff's failure to plead fraud with particularity, the footnote is not argument – it merely refers to a line in the *2013 March Order* in which the Court quoted Plaintiff's allegation of fraud as an example. *See March 2013 Order* at 13-14. Second, to the extent the footnote is argument, Defendants misread the *March 2013 Order*. Throughout the *March 2013 Order*, the Court continually references Plaintiff's UCL *claims*, not Plaintiff's UCL *claim*. *See id.* at 12-14. Further, nowhere does the *March 2013 Order* distinguish Plaintiff's fraud based UCL claim from Plaintiff's unlawful and unfair conduct claims in analyzing whether these claims are ERISA preempted. *See id.* Indeed, the Court's introductory words regarding ERISA preemption emphasize the plurality of Plaintiff's UCL claims: "Plaintiff asserts *claims* against all Defendants under *each* of the three prongs (fraudulent, unfair, and unlawful) of California's Unfair Competition Law." *Id.* at 12 (emphasis added). In closing, the Court further states that "the *claims* are neither preempted by the *Davila* test nor by § 1144(a)." *Id.* at 14 (emphasis added). The Court thus disregards Defendants' strained interpretation of the *March 2013 Order*. *See In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d at 914 ("A party that relies on its own strained interpretation of a Court order does so at its own peril.").

Finally, to the extent that Defendants' Reply actually *argues* the preemption issue anew, the Court ignores it as well. *See Reply* 10:5-14. Although Defendants were entitled to raise new arguments in their Motion, they are not entitled to do so in their Reply. For the sake of fairness to Plaintiff, Defendants waive any argument raised for the first time in their Reply. *See Jiang v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

#133

| Case No. | CV 12-2916 PSG (FFMx) | | Date | December 13, 2013 |
|---|---|---|---|---|
| Title | *Forest Ambulatory Surgical Associates, L.P. v. Ingenix, Inc., et al.* | | | |

*Still*, 307 F. App'x 74, 76 (9th Cir. 2009) ("Whatever the merits of this argument, though, Fan has waived it by failing to present it in her opening brief."); *Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996) ("It is well established in this circuit that the general rule is that appellants cannot raise a new issue for the first time in their reply briefs.") (internal citations omitted).

With these procedural considerations in mind, the Court turns to whether Plaintiff's TAC adequately pleads each prong of the UCL.

ii.    The Merits

The UCL prohibits an "unlawful, unfair, or fraudulent business act or practice."  *See Ariz. Cartridge Remanufacturers Ass'n v. Lexmark Int'l, Inc.*, 421 F.3d 981, 985 (9th Cir. 2005) (quoting Cal. Bus. & Prof. Code § 17200).  An "unlawful" business practice under section 17200 is any business practice that is prohibited by any "federal, state, or local law, whether civil or criminal, statutory or judicially made."  *McKell v. Wash. Mut. Inc.*, 142 Cal. App. 4th 1457, 1474, 49 Cal. Rptr. 3d 2227 (2006) (citations omitted).  A business practice is "unfair" under section 17200 "if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits."  *Id.* at 1473.  A "fraudulent" business practice under section 17200 is "one which is likely to deceive the public," and "may be based on representations to the public which are untrue, and also those which may be accurate on some level, but will nonetheless tend to mislead or deceive."  *Id.* at 1471.  UCL claims based on fraud are subject to the heightened pleading requirements of Rule 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 865 F. Supp. 2d at 1047.

a.    Unlawful Business Practices

Plaintiff's TAC adequately alleges that United engaged in practices "prohibited by any federal, state, or local law."  *See McKell*, 142 Cal. App. 4th at 1474.  In particular, Plaintiff claims that United "fail[ed] to correctly and accurately apply the criteria used to calculated [sic] UCR rates as set forth in Title 28 of the California Code of Regulations, section 1300.71(a)(3)(B)."  *TAC* ¶ 276(h); *see also Opp.* 21:23:25.  Plaintiff's TAC also states that United "fail[ed] to comply with California Health and Safety Code § 1371 and 28 C.C.R. § 1300.71 by knowingly . . . engaging in an 'unfair payment pattern,' . . . delaying payment of claims, reducing the amount of payment and/or denying payment of claims . . . and not paying

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

#133

| Case No. | CV 12-2916 PSG (FFMx) | Date | December 13, 2013 |
|---|---|---|---|
| Title | *Forest Ambulatory Surgical Associates, L.P. v. Ingenix, Inc., et al.* | | |

reasonable and customary rates." *Id.* Statements like these are detailed enough to survive Defendants' Motion. *See McKell*, 142 Cal. App. 4th at 1474.

Plaintiff thus adequately pleads that United violated the unlawful prong of the UCL.

### b.    *Unfair Business Practices*

Plaintiff also adequately pleads that United engaged in unfair business practices under the UCL. For example, Plaintiff's TAC states that United "used arbitrary, capricious, and improper methods to improperly underprice FASA's claims for out-of-network services" and "submitt[ed], accept[ed] and us[ed] incomplete and scrubbed data to the Ingenix Database such that it could not accurately determine UCR for FASA's claims." *TAC* ¶ 276(a)-(b). Likewise, United "conceal[ed] and/or omitt[ed] material information in EOBs, RAs, and other correspondence concerning the manner in which United determine[d] the reimbursement amount for FASA's out-of-network claims." *Id.* ¶ 276(d). These statements adequately allege that United engaged in "immoral, unethical, oppressive or unscrupulous" practices that "cause[d] injury to consumers." *See McKell*, 142 Cal. App. 4th at 1474. As such, these allegations adequately state a claim for unfair business practices under the UCL.

### c.    *Fraudulent Business Practices*

Unlike Plaintiff's allegations that United engaged in unlawful and unfair business practices, Plaintiff's fraud allegations do not pass muster. Although Plaintiff pleads fraud under the UCL, it is still required to do so with specificity under Rule 9(b). *See Kearns*, 567 F.3d at 1125 ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL.") (internal citations omitted); *In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*, 903 F. Supp. 2d at 925 ("UCL claims based on fraud are subject to the heightened pleading requirements of Rule 9(b)."). This requires Plaintiff to plead "the who, what, when, where, and how of the alleged fraudulent conduct" and explain "why [a] statement or omission complained of was false and misleading." *Id.*

Defendants argue that Plaintiff's allegations of fraud fail Rule 9(b)'s heightened pleading standard because the allegations do not differentiate the alleged misconduct of each of the United Defendants, but instead impermissibly "lump" them together under the monolithic label "United Defendants." *See Mot.* 17:14-20. To address this argument, the Court refers to its decision in *In re Wellpoint Out-Of-Network "UCR" Rates Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011). Plaintiffs in that case, like Plaintiff here, argued that Rule 9(b) did not require them to plead specific acts of fraud committed by each defendant. *See id.* Rather, in plaintiffs'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

#133

| Case No. | CV 12-2916 PSG (FFMx) | Date | December 13, 2013 |
|---|---|---|---|
| Title | *Forest Ambulatory Surgical Associates, L.P. v. Ingenix, Inc., et al.* | | |

view, it was sufficient to allege that "UHF Defendants," rather than "UHG or Ingenix" specifically, committed the act in question. *Id.*

However, the Court rejected plaintiffs' argument then, and rejects Plaintiff's identical argument now. A plaintiff alleging fraud, whether under the UCL or RICO, must specify the act that "*each* defendant" allegedly committed. *Id.* (emphasis in original). Lumping defendants together will simply not do, for each and every United Defendant in this action is entitled to fair notice of the fraud claims alleged against it. *See Perigeuerra v. Meridas Capital, Inc.*, No. C 09–4748 SBA, 2010 WL 395932, at *8 (N.D. Cal. Feb. 1, 2010) ("Plaintiffs also fail to differentiate between the conduct of the various Defendants, and impermissibly attribute the underlying violations to all 'Defendants.' Such failure to allege the conduct underlying a UCL claim with reasonable particularity violates Defendants' right to fair notice . . . .").

Plaintiff attempts to distinguish its case on three grounds. First, Plaintiff avers that it should not be required to allege fraud against each United Defendant because the fraud involves many thousands of statements and omissions occurring over many years." *Opp.* 11:26-28. Plaintiff cites two cases in support of this proposition, *Gonzales v. Lloyds TSB Bank, PLC*, 532 F. Supp. 2d 1200, 1211-212 (C.D. Cal 2006) and *United States v. Hempfling*, 431 F. Supp. 2d 1069, 1075 (E.D. Cal. 2006). *See Opp.* 10:12-20. Each case, though, is inapposite.

In *Gonzales*, plaintiffs brought a RICO cause of action for alleged wire fraud. *See* 532 F. Supp. 2d 1200, 1211-12 (C.D. Cal 2006). Although plaintiffs failed to allege specific dates on which the allege wire fraud occurred, the court did not dismiss plaintiffs' cause of action under Rule 9(b). *Id.* Plaintiffs were absolved of their mistake because they "provide[d] a time frame for these transfers and general allegations as to the entities involved in these transfers." *Id.*

While the *Gonzales* plaintiffs' allegations were indeed "general," they still singled out at least one of the entities allegedly involved in the RICO conspiracy. *See id.* This is not the case here, as Plaintiff fails to single out any of the entities allegedly involved in the RICO conspiracy. Instead, Plaintiff simply lumps multiple Defendants together into nebulous groupings such as "United Defendants," "ERISA Plan Defendants," and "Non-ERISA Plan Defendants." *See TAC* ¶ 276. Further, *Gonzales* fails to address the precise issue at hand. The question before the Court is whether Plaintiff must differentiate its pleadings as to each United Defendant, not Plaintiff's failure to allege specific dates on which United allegedly committed fraud.

Compared to *Gonzales*, Plaintiff's reference to *Hempfling* is even less helpful to its cause. *See* 431 F. Supp. 2d at 1075. In *Hempfling*, plaintiff's cause of action for fraud actually named a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

#133

| Case No. | CV 12-2916 PSG (FFMx) | Date | December 13, 2013 |
|----------|------------------------|------|-------------------|

| Title | *Forest Ambulatory Surgical Associates, L.P. v. Ingenix, Inc., et al.* |
|-------|------------------------------------------------------------------------|

specific defendant, rather than lumping defendants into a putative class. *See id.* With respect to Plaintiff's first argument, then, the Court is not convinced. Regardless of the period of time in which United allegedly committed fraud, Plaintiff must still plead with particularity as to each United Defendant. *See In re Wellpoint Out-Of-Network "UCR" Rates Litig.,* 865 F. Supp. 2d at 1035; *see also Dooley v. Crab Boat Owners Ass'n,* No. 02–0676 MHP, 2004 WL 902361, at *5 (N.D. Cal. Apr. 26, 2004) (analyzing whether each of the several defendants independently met this standard).

   In addition, Plaintiff argues that its pleadings should not be held to Rule 9(b)'s heightened pleading standard because the "repetitive nature of the predicate acts of mail and/or wire fraud . . . would make it unduly cumulative to allege each individual instance of those frauds." *Opp.* 12:4-7. Yet Plaintiff offers no authority to support this novel proposition of law. Even so, the Court finds no reason to magnanimously temper Rule 9(b)'s heightened pleading standard just because a fraudulent act might be repetitive. In fact, if the fraud occurred so often, Plaintiff should at least be able to point its finger at one particular member of the United Defendants. *See In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 903 F. Supp. 2d at 914 (requiring plaintiffs to identify specific acts that each defendant allegedly committed "given the countless and nearly constant acts of mail and wire fraud in which [defendants] purportedly engaged").

   Finally, Plaintiff hangs its proverbial hat on one last argument. Plaintiff avers that without taking discovery on the issue, it is impossible to sort out each of the United Defendants' roles in the alleged fraud because the fraud was perpetrated by corporate affiliates and subsidiaries all using a variation of the name "United Healthcare." *Opp.* 12-8-20. Plaintiff then refers the Court to *Wool v. Tandem Computers Inc*, 818 F.2d 1433, 1439-40 (9th Cir. 1987).

   As here, the *Wool* plaintiffs alleged that "all defendants" committed fraud rather than pleading specific instances of fraud committed by each defendant separately. And, as here, each of the *Wool* defendants objected to plaintiffs' allegations for failing to attribute particular fraudulent statements or acts to each defendant. The *Wool* court ultimately sided with plaintiffs, concluding that: "In cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other 'group-published information,' it is reasonable to presume that these are the collective actions of the officers." *Id.* With this statement, *Wool* effectively created the "group-pleading" doctrine.

   If *Wool*'s group-pleading doctrine were the law today, Plaintiff would certainly have a point. But it's not. The enactment of the PSLRA overruled the group-pleading standard enunciated in *Wool*. *See, e.g., 1849 Condos. Ass'n v. Bruner*, 2:09-cv-3339, 2011 U.S. Dist.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

#133

| Case No. | CV 12-2916 PSG (FFMx) | Date | December 13, 2013 |
|---|---|---|---|
| Title | *Forest Ambulatory Surgical Associates, L.P. v. Ingenix, Inc., et al.* | | |

LEXIS 16029, at *9 (E.D. Cal. Feb. 16, 2011) ("[T]he group pleading theory permitted in *Wool* has been superseded by statute.").

Thus, despite Plaintiff's three arguments to the contrary, the Court refuses to reconsider the heightened pleading standard that must be satisfied as to each and every defendant in a fraud action. The Court thus stands by its decision in *In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*: "In the context of a fraud suit involving multiple defendants, a plaintiff must also identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." 903 F. Supp. 2d at 913 (internal citations omitted).

Accordingly, the Court DENIES Defendants' Motion as to Plaintiff's UCL claims for unlawful and unfair business practices, and GRANTS Defendants' Motion as to Plaintiff's UCL claim for fraud, WITH LEAVE TO AMEND.

C.     Non-HINRM Reimbursement Methodologies

Defendants' Motion finally argues that Plaintiff does not have standing to challenge United's alleged use of reimbursement methodologies other than the Highest In-Network Rate Multiplier ("HINRM"). *See Mot.* 19:25-21:11. Defendants specifically aver that Plaintiff pleads no facts showing that any of their medical claims were reimbursed using reimbursement methodologies other than the HINRM, such as the Ingenix Database, the Official Medical Fee Schedule ("OMFS"), a multiplier of the applicable Medicare rate ("MNRP"), or unspecified "other" reimbursement methodologies. *See id.* 20:17-22. Defendants thus ask the Court to dismiss each and every one of Plaintiff's claims to the extent they are based upon or encompass United's use of such "other" non-HINRM methodologies. *See Mot.* 21:8-11.

i.     *Procedural Issues*

Once again, Plaintiff argues that the Court should pay no heed to Defendants' argument because the TAC contains the same allegations of United's use of MNRP, OMFS, the Ingenix Database, and other methodologies as contained in the SAC. *See Opp.* 24:1-4. However, the Court reminds Plaintiff that Defendants' Motion may raise new arguments that were not previously raised in Defendants' motion to dismiss the SAC. *See In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 903 F. Supp. 2d at 893. This remains true even if the TAC perfectly mirrors the SAC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

#133

| Case No. | CV 12-2916 PSG (FFMx) | Date | December 13, 2013 |
|---|---|---|---|
| Title | *Forest Ambulatory Surgical Associates, L.P. v. Ingenix, Inc., et al.* | | |

Further, just as Defendants misinterpreted the scope of the *March 2013 Order*, Plaintiff does so here with respect to the issue of Article III standing. Plaintiff argues that the *March 2013 Order* already addressed the standing argument by concluding that "to the extent Defendants argue that Plaintiff lacks standing to bring claims under 29 U.S.C. § 1132(a)(1)(B), the motion is DENIED." *March 2013 Order* at 7.

Contrary to Plaintiff's interpretation, however, the Court's prior conclusion in no way foreclosed Defendants' current argument. In fact, the Court never reviewed Plaintiff's standing with respect to the specific reimbursement methodologies that Defendants now question. Defendants' Motion does not therefore misinterpret the Court's *March 2013 Order*. Rather, Plaintiff misinterprets it. *See In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d at 914 ("A party that relies on its own strained interpretation of a Court order does so at its own peril."). With these procedural issues settled, the Court proceeds to the merits of Defendants' argument.

### ii.    The Merits

Article III standing is a jurisdictional prerequisite to a federal court's consideration of any claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To plead Article III standing, a plaintiff must allege: (1) injury-in-fact; (2) causation; and (3) that the injury is likely to be redressed by the requested relief. *Id.* at 560-61; *accord Bates v. United Parcel Serv. Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). When a plaintiff fails to plead facts supporting each element of standing in its complaint, the court must dismiss the action pursuant to Rule 12(b)(6). *See Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 711 (9th Cir. 2006) ("To survive a Rule 12(b)(6) motion to dismiss, [plaintiff] must allege facts . . . that, if proven, would confer standing upon him.").

Because Article III standing requires Plaintiff's injuries to be "actual or imminent, [and] not conjectural or hypothetical," Plaintiff must show that their medical claims were reimbursed using one of the non-HINRM reimbursement methodologies. *See Lujan*, 504 U.S. at 560. Plaintiff's Opposition puts forth three allegations from the TAC in hopes of showing that "Defendants paid FASA according to the other methodologies alleged." *Opp.* 24:7-10.

The first and second allegations fail to make this showing as they are devoid of any claim that Defendants used non-HINRM reimbursement methodologies to price *Plaintiff's* medical claims, rather than out-of-network providers generally. *See Opp.* 24:11-15; *see also TAC* ¶ 173 ("United sometimes determines the UCR rate *for out-of-network claims* by . . . us[ing] a multiple

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

#133

| Case No. | CV 12-2916 PSG (FFMx) | Date | December 13, 2013 |
|---|---|---|---|
| Title | *Forest Ambulatory Surgical Associates, L.P. v. Ingenix, Inc., et al.* | | |

of the Medicare rates established by CMS, as set forth in the Official Medical Fee Schedule ('OMFS') . . . .") (emphasis added); *id.* ¶ 174 ("United also has calculated the UCR rate for *some of its out-of-network claims* using what is commonly referred to as the 'Ingenix Database.'") (emphasis added). United's general *use* of allegedly flawed reimbursement methodologies, such as the OMFS and Ingenix Database, does not confer standing upon Plaintiff. *See In re Wellpoint Out-of-Network "UCR" Rates Litig.*, 865 F. Supp. 2d at 1021 (dismissing plaintiffs' claims for lack of standing because "[p]laintiffs have failed to identify which individuals were affected by the non-Ingenix ONS benefit reductions, and how each was injured").

Plaintiff final allegation, however, avoids this pitfall. Plaintiff's TAC states that "the reimbursement amount for most of the claims *submitted by FASA* was determined by . . . a program based on a multiple of Medicare rates called the Maximum Non-Network Reimbursement Program ('MNRP')." *TAC* ¶ 206 (emphasis added). Unlike the previous two allegations, this allegation states that Defendants not only used the MNRP methodology, but used it to price *Plaintiff*'s claims for reimbursement. Defendants' Motion admits as much. *See Mot.* 20:22-24 ("Plaintiff clearly pleads that 'United' reimbursed its claims using either the Highest In-Network Rate Multiplier or MNRP.") (citing *TAC* 206-207). Plaintiff thus has standing to challenge Defendants' alleged use of the MNRP methodology for pricing its claims. *See Lujan*, 504 U.S. at 560.

Aside from Defendants' alleged use of the MNRP methodology for reimbursing Plaintiff's claims, however, Plaintiff's Opposition does not shore up Plaintiff's failure to plead Defendants' alleged use of the Ingenix Database, the OMFS methodology, or "other" unspecified methodologies for pricing its reimbursement claims. *See Opp.* 24:24-25:8. As such, Plaintiff lacks standing to challenge Defendants' alleged use of the Ingenix Database, the OMFS methodology, and "other" unspecified methodologies for pricing its reimbursement claims. *See In re Wellpoint Out-of-Network "UCR" Rates Litig.*, 865 F. Supp. 2d at 1021 (granting motion to dismiss claims based on certain benefit reductions for lack of standing where "Plaintiffs have failed to identity which individuals were affected by the non-Ingenix ONS benefit reductions, and how each was injured," and noting that "[c]onclusory statements about faulty reimbursements do not plausibly show that Plaintiffs have standing to complain about the ONS benefit reductions") (citing *Iqbal*, 556 U.S. at 662).

Accordingly, the Court DENIES Defendants' Motion as it relates to the MNRP methodology, and GRANTS the Motion as it relates to the Ingenix Database, the OMFS methodology, and unspecified "other" methodologies, WITH LEAVE TO AMEND.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

#133

| Case No. | CV 12-2916 PSG (FFMx) | Date | December 13, 2013 |
|----------|----------------------|------|-------------------|
| Title | *Forest Ambulatory Surgical Associates, L.P. v. Ingenix, Inc., et al.* | | |

IV.   Conclusion

Thus, based on the foregoing, the Court:

- GRANTS Defendants' Motion to Dismiss the RICO claim, WITH LEAVE TO AMEND;

- GRANTS Defendants' Motion to Dismiss the RICO conspiracy claim, WITH LEAVE TO AMEND;

- DENIES Defendants' Motion to Dismiss the UCL claims for unlawful and unfair business practices;

- GRANTS Defendants' Motion to Dismiss the UCL claim for fraud, WITH LEAVE TO AMEND;

- DENIES Defendants' Motion to Dismiss claims premised on the MNRP methodology;

- GRANTS Defendants' Motion to Dismiss claims premised on the Ingenix Database, the OMFS methodology, and unspecified "other" reimbursement methodologies, WITH LEAVE TO AMEND.

If Plaintiff wishes to file an amended complaint addressing the specific pleading deficiencies noted herein, it must do so by **January 31, 2014**. Failure to file an amended complaint by this date will result in the dismissal with prejudice of those causes of action for which the Court granted leave to amend.

**IT IS SO ORDERED.**